**Opinion filed January 29, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00095-CR

_____

## JAMES WILLIAM SMITH, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 350th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 10035-D**

## M E M O R A N D U M   O P I N I O N

The jury found James William Smith, Appellant, guilty of the offense of possession of cocaine.[1]  The jury found that Appellant had two prior felony convictions for possession of cocaine and assessed punishment at confinement for

---

[1]*See* TEX. HEALTH & SAFETY CODE ANN. § 481.102(3)(D) (Penalty Group 1), § 481.115(b) (Offense: Possession of Substance in Penalty Group 1) (West 2010).

eight years. The trial court sentenced Appellant accordingly. Appellant challenges the sufficiency of the evidence to support his conviction, and he also asserts that he received ineffective assistance of counsel. We affirm.

## I. *The Charged Offense*

The grand jury indicted Appellant for possession of less than one gram of cocaine with two prior felony convictions for possession of cocaine. Appellant's first prior conviction was a third-degree felony, and his second prior conviction was a second-degree felony.

A person commits the offense of possession of cocaine if he intentionally or knowingly possesses cocaine. HEALTH & SAFETY §§ 481.102(3)(D), 481.115(a). Possession of less than one gram of cocaine is a state jail felony. HEALTH & SAFETY § 481.115(b). A state jail felony with two prior felony convictions becomes punishable as a second-degree felony, which shall be punished by imprisonment "for any term of not more than 20 years or less than 2 years" and an optional fine "not to exceed $10,000."[2] TEX. PENAL CODE ANN. § 12.33 (West 2011) (Second Degree Felony Punishment), § 12.425(b) (West Supp. 2014) (Penalties for Repeat and Habitual Felony Offenders on Trial for State Jail Felony).

Appellant pleaded "not guilty" and proceeded to trial.

## II. *Evidence at Trial*

Cati Schriver, a detective with the Abilene Police Department, testified that she pulled Appellant over because she "thought [Appellant] would possibly be intoxicated." Detective Schriver testified that she turned on her "Coban" when she began following Appellant and that the video accurately depicted what happened.[3]

---

[2]The two previous convictions must not be state jail felony convictions, and the second previous conviction must have occurred subsequent to the first previous conviction. PENAL § 12.425(b).

[3]Detective Schriver explained that a "Coban" is a camera system mounted behind the rearview mirror of the police car that records audio and video.

She called for a K-9 officer, and Officer Kevin Easley arrived five to seven minutes later. She also performed a horizontal gaze nystagmus test on Appellant and believed that he was not intoxicated.

Officer Easley, a K-9 handler with the City of Abilene, had a K-9 named Rocco at the time of Appellant's arrest in this case. Officer Easley testified that he received a call for a K-9 officer for a traffic stop, that Officer Schriver was the officer involved, and that Appellant was the citizen who was stopped. Officer Easley did not remember any other officers or citizens present. Officer Easley advised Detective Schriver that the dog gave a positive alert; whereupon, Detective Schriver searched Appellant. Detective Schriver testified that she found "small off-white rock substances" in Appellant's shirt pocket that she believed was crack cocaine.

Officer Easley testified that Rocco alerted to a piece of plastic on the ground near Appellant's pickup and to the driver's door of Appellant's pickup. Officer Easley testified that, after Rocco made a positive alert, Officer Easley searched Appellant's pickup but did not find any drugs. He said that Detective Schriver reported that she found "some small objects" on Appellant and that they suspected it was crack cocaine. He also said that he tested the substance that Detective Schriver seized from Appellant's shirt pocket and that it tested positive for cocaine.

Detective Schriver testified that State's Exhibit No. 2 was the same envelope that she signed into evidence into which she had placed the rocklike substance that she took from Appellant's shirt pocket. She placed a clear piece of tape on the back of the envelope with her initials "half on half off the tape" to make it obvious if anyone "breaks that seal" "because it won't line up anymore." After she signed the envelope, she locked it in the evidence vault. One of three evidence clerks moved it from the small vault lockbox "into the bigger," and that person's name appeared on the envelope. Detective Schriver said that she knew the envelope was

3

delivered to the "Texas Department of Safety's laboratory" for analysis because two seals appeared on the envelope: the person who took it from the police department placed one seal, and the person who received it at the lab placed the other seal. She also said that Jimmy Seals's name appeared on the seal that showed Seals took the envelope from the police department to the lab.

On cross-examination, Detective Schriver testified that she pulled Appellant over for weaving and speeding. Appellant's trial counsel subsequently asked Detective Schriver, "What caused you to go from speeding and weaving to drug possession? . . . What about that event caused you to think that . . . you needed to search him or his vehicle for drugs?" Detective Schriver answered, "Whenever we stop somebody, we run their name through our system and I could see previous history of drug possession." Appellant's trial counsel objected to Detective Schriver's answer and explained, "[T]he witness has testified to my client's prior record. . . . And we're in the guilt and innocence phase of this, Your Honor. There is no place for us to be getting into his prior record at this point." The trial court responded, "You opened the door . . . . That question just begs for that response," and overruled the objection.

Detective Schriver also testified on cross-examination that she had stopped Appellant once prior to this stop, had called the drug dog, had searched Appellant, and had not found any drugs in Appellant's vehicle or on his person during the prior stop. She agreed that she had made a mistake about drug possession the previous time she pulled Appellant over. She also agreed that she was mistaken during the second stop when she thought that Appellant was intoxicated. She said that the objects found in Appellant's shirt pocket were "small pieces of an off-white rocklike substance" "approximately the size of a BB," that "there was more than one," and that "[t]hey were all small. They looked as if maybe they had crumbled."

4

William Chandley, a chemist with the drug section of the Department of Public Safety's crime lab, testified that he recognized the envelope labeled as State's Exhibit No. 2, that he tested the substance contained in it, and that Appellant's name appeared as the suspect on the report and the submission form. Chandley testified that he received the envelope from Seals, the "evidence person" for the Abilene Police Department. Chandley testified that the envelope did not "appear to have been tampered with in any way" when he received it. Chandley testified that he analyzed the contents of the envelope and determined that it contained .03 grams of cocaine. On cross-examination, Chandley testified that State's Exhibit No. 2 contained a powder and that he received it from the police department in powder form.

Detective Schriver's "Coban" video showed that she followed Appellant.[4] Officer Easley and Rocco walked around Appellant's pickup after Detective Schriver pulled Appellant over. Rocco looked back and forth from the ground to Officer Easley. Officer Easley picked up something that was on the ground and searched the cab of Appellant's pickup.

The video also showed that Detective Schriver performed the horizontal gaze nystagmus test on Appellant while the K-9 unit walked around and searched the pickup. Detective Schriver determined that Appellant was not intoxicated while Officer Easley searched the cab of Appellant's pickup. Detective Schriver subsequently began to search Appellant. Detective Schriver pulled out several objects, including a razor blade, from Appellant's shirt pocket. Detective Schriver talked with Officer Easley about what she had found. Detective Schriver arrested Appellant and told him that the "little white rocks" she had pulled out of his shirt "tested positive."

---

[4]The record shows that both the State and Appellant agreed to stop the video at a certain point, but the record does not state when. We will describe the pertinent facts contained in the video.

### III. *Issues Presented*

Appellant presents two points of error on appeal. In the first point, he challenges the sufficiency of the evidence to convict him. In the second point, he asserts that he received ineffective assistance of counsel.

### IV. *Standard of Review*

We apply the sufficiency standard outlined in *Jackson* and its progeny to Appellant's sufficiency point. *Jackson v. Virginia*, 443 U.S. 307, 318 (1979); *Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We review all of the evidence introduced by both the State and Appellant in the light most favorable to the jury's verdict and decide whether any rational jury could have found each element of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. We rely on the jury to resolve conflicts in the evidence, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *See id.* We review all evidence, whether the trial court properly or improperly admitted it. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). With respect to Appellant's complaint of ineffective assistance of counsel, we apply the well-recognized standard of review from *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

### V. *Analysis*

#### A. *Point One: Sufficiency of the evidence*

Appellant challenges the sufficiency of the evidence to support his conviction because the State, he asserts, did not prove the chain of custody of the cocaine. He complains that a break in the chain of custody existed between Detective Schriver, who booked the substance into police evidence, and Chandley, who received the substance at the lab. Appellant asserts that the change from the "rocklike substance" that Detective Schriver seized from Appellant's shirt pocket to the "powder" that the lab received "gives rise to an inference that tampering or

alteration took place." Appellant did not object to the admission of State's Exhibit No. 2 and does not challenge its admission on appeal.

The evidence showed that Rocco made a positive alert for drugs on the piece of plastic that fell to the ground. Detective Schriver subsequently searched Appellant and found crumbled, off-white rocklike pieces of what she thought was crack cocaine in his shirt pocket. Officer Easley performed a preliminary field test on the rocklike substance, and it tested positive for cocaine.

Detective Schriver placed the rocklike substance that she took from Appellant's shirt pocket into an envelope; signed her name on the envelope, along with her initials and the date of the arrest; and placed tape on the back with her initials "half on half off the tape." Detective Schriver locked the envelope in the evidence vault, and the clerk's name appeared on the envelope along with a seal that showed that Seals took the envelope to the DPS lab. State's Exhibit No. 2 was that same envelope, and the case number on the envelope corresponded with Appellant's case. Chandley received the envelope from Seals and testified that it had not been tampered with. Chandley tested the substance in the envelope and found that it contained .03 grams of cocaine.

No evidence in the record indicated that anyone tampered with the envelope; therefore, the jury was free to infer that the crumbled, rocklike substance became a powder between the time Detective Schriver booked it into evidence and the time Chandley received it at the lab. *See Jackson*, 443 U.S. at 319; *see, e.g.*, *Samaniego v. State*, No. 03-01-00718-CR, 2002 WL 1724016, at *4 (Tex. App.—Austin July 26, 2002, no pet.) (not designated for publication) (holding that "[t]here is no reason to believe the evidence did not simply deteriorate by breaking down from 'rock' form to granular form over the time between the seizure and its presentation at trial"). The evidence was sufficient for a rational jury to find beyond a

reasonable doubt all of the elements of the offense of possession of cocaine by Appellant. *See Jackson*, 443 U.S. at 319. We overrule Appellant's first point.

*B. Point Two: Ineffective assistance of counsel*

Appellant asserts that he received ineffective assistance from his trial counsel. Specifically, Appellant complains that his trial counsel's performance was deficient because counsel opened the door to Appellant's criminal history, failed to request a limiting instruction or jury instruction in the charge, "failed to object or preserve error for appeal on the issue of chain of custody or admission of the substance alleged to be cocaine," and "failed to object to or file a pretrial motion to exclude the mention or use of field tests."

The benchmark for evaluating an ineffective-assistance-of-counsel claim is whether counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. The *Strickland* test has two prongs: (1) a performance standard and (2) a prejudice standard. *Id.* at 687. For the performance standard, we must determine whether Appellant has shown that counsel's representation fell below an objective standard of reasonableness. *Id.* If so, we then determine whether there is a reasonable probability that the outcome would have differed but for counsel's errors. *Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *Strickland*, 466 U.S. at 686; *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005).

The reasonable probability must rise to the level that it undermines confidence in the outcome of the trial. *Isham v. State*, 258 S.W.3d 244, 250 (Tex. App.—Eastland 2008, pet. ref'd). A failure to make a showing under either prong of the *Strickland* test defeats a claim of ineffective assistance of counsel. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010); *Andrews*, 159 S.W.3d at 101. A reviewing court need not consider both prongs of the *Strickland* test and can

dispose of an ineffectiveness claim on either prong. *Walker v. State*, 406 S.W.3d 590, 594 (Tex. App.—Eastland 2013, pet. ref'd) (citing *Cox v. State*, 389 S.W.3d 817, 819 (Tex. Crim. App. 2012)); *see Strickland*, 466 U.S. at 697.

The first prong of *Strickland* requires Appellant to establish that trial counsel provided deficient assistance of counsel. There is a strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Isham*, 258 S.W.3d at 250. To overcome this deferential presumption, an allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). In most cases, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Id.* Appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *Hayden v. State*, 155 S.W.3d 640, 648 (Tex. App.—Eastland 2005, pet. ref'd). Generally, the record on direct appeal will not be sufficient to show that trial counsel's representation was so lacking as to overcome the presumption of reasonable conduct. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

We do not inquire into trial strategy unless no plausible basis exists for trial counsel's actions. *Johnson v. State*, 614 S.W.2d 148, 152 (Tex. Crim. App. [Panel Op.] 1981). When the record contains no evidence of the reasoning behind trial counsel's actions, we cannot conclude that counsel's performance was deficient. *Jackson*, 877 S.W.2d at 771. If trial counsel cannot explain the challenged actions, then we will not conclude that those actions constituted deficient performance unless they were so outrageous that no competent attorney would have engaged in

them.  *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003).

### 1. *Opening the door*

Evidence of other crimes, wrongs, or acts is inadmissible at the guilt/innocence phase of trial to show the accused's conformity with those other acts.  TEX. R. EVID. 404(b); *Lockhart v. State*, 847 S.W.2d 568, 570 (Tex. Crim. App. 1992).  An accused may make otherwise inadmissible evidence admissible, however, by "opening the door" through questions that elicit testimony about the extraneous offenses.  *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

The record shows that Appellant's trial counsel unintentionally elicited testimony about Appellant's criminal history.  The trial court admitted that testimony over counsel's objections, ruling that counsel had "opened the door by the nature of [his] question in this proceeding."  Appellant has failed to show by a preponderance of the evidence that a reasonable probability exists that, but for counsel's error, the result of the proceeding would have been different.  *See Strickland*, 466 U.S. at 687.

### 2. *Limiting instruction*

Appellant complains that he was prejudiced when his trial counsel did not request a limiting instruction subsequent to his opening the door to extraneous offenses.  Appellant cites to *Ex parte Varelas*, 45 S.W.3d 627, 631–32 (Tex. Crim. App. 2001), to support his position.  In *Varelas*, the defendant's counsel failed to request a burden of proof or limiting instruction after the trial court admitted State-offered evidence of an extraneous offense.  45 S.W.3d at 631.  In *Varelas*, a habeas proceeding, the Court of Criminal Appeals had before it an affidavit from Varelas's trial counsel regarding his oversight, as opposed to trial strategy, in failing to request a limiting instruction.  *Id.* at 632.  Moreover, the Court of

10

Criminal Appeals in *Varelas* recognized that the appellate record on direct appeal is usually inadequate to develop a claim of ineffective assistance. *Id.* at 629–30. Without evidence in the record, we will not speculate why Appellant's trial counsel did not request a limiting instruction. *See Delgado v. State*, 235 S.W.3d 244, 250 (Tex. Crim. App. 2007) (noting that "the decision of whether to request a limiting instruction concerning the proper use of certain evidence, including extraneous offenses, may be a matter of trial strategy"); *Johnson*, 614 S.W.2d at 152; *cf. Ex parte Varelas*, 45 S.W.3d at 632 (using affidavit from trial counsel in habeas proceeding to determine whether actions at trial were result of trial strategy). We cannot conclude, based on a silent record, that counsel's failure to request a limiting instruction was deficient; nor can we conclude that it was so outrageous that no competent attorney would do likewise. *See Jackson*, 877 S.W.2d at 771 (holding that lack of evidence in record of trial counsel's reasons for actions precludes court from concluding that trial counsel's performance was deficient); *see, e.g.*, *Garcia v. State*, 887 S.W.2d 862, 881 (Tex. Crim. App. 1994) (holding that counsel's decision to not request a limiting instruction was not an unreasonable trial strategy because a request may have drawn "more attention to the incriminating evidence").

### 3. Chain of custody

The State offered State's Exhibit No. 2, which contained cocaine, without objection from Appellant's trial counsel. The record does not explain why Appellant's trial counsel did not object to State's Exhibit No. 2; therefore, we cannot conclude that his actions were deficient. *See Jackson*, 877 S.W.2d at 771. Counsel's actions were not so outrageous that a competent attorney would have done otherwise. *See Goodspeed*, 187 S.W.3d at 392; *see, e.g.*, *O'Donoghue v. State*, No. 13-09-329-CR, 2010 WL 2783746, at \*5 (Tex. App.—Corpus Christi July 15, 2010, pet. ref'd) (mem. op., not designated for publication) (holding that

11

trial counsel's failure to object to the chain of custody of certain evidence was not outrageous).

### 4. *Field test*

Appellant's trial counsel did not object to any testimony related to Officer Easley's field test of the substance that Detective Schriver seized from Appellant, and no evidence exists in the record to show why Appellant's trial counsel acted in this manner. Without such evidence, we cannot conclude that his actions were deficient. *See Jackson*, 877 S.W.2d at 771. Counsel's actions were not outrageous because Chandley's testimony that the substance tested positive for cocaine would make the introduction of the field test harmless error. *See Goodspeed*, 187 S.W.3d at 392; *Bonner v. State*, No. 11-93-159-CR, 1994 WL 16189698, at *2 (Tex. App.—Eastland Dec. 1, 1994, pet. ref'd) (not designated for publication) (citing *Hicks v. State*, 545 S.W.2d 805, 809–10 (Tex. Crim. App. 1977)) (holding that "any error brought about by counsel's failure to object [to an inadmissible field test] was rendered harmless upon the introduction of . . . the chemist's report"). For counsel's actions or omissions related to the limiting instruction, the chain of custody, and the field test, we do not reach the prejudice prong of *Strickland* because Appellant has failed to satisfy the deficient-performance prong. *See Perez*, 310 S.W.3d at 893. We overrule Appellant's second point.

### VI. *Conclusion*

After reviewing the record, we hold that there was sufficient evidence for a rational jury to have found beyond a reasonable doubt all of the elements for the offense of possession of cocaine by Appellant. *See Jackson*, 443 U.S. at 318. We also hold that Appellant has not satisfied both prongs under *Strickland* as required to sustain his claim of ineffective assistance of counsel. *See Strickland*, 466 U.S. at 686.

## VII. *This Court's Ruling*

We affirm the judgment of the trial court.

MIKE WILLSON

JUSTICE

January 29, 2015

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.