PD-0405-15

# IN THE
## COURT OF CRIMINAL APPEALS
## OF TEXAS

| | | |
|---|---|---|
| **JAMES SMITH** | § | |
| | § | |
| **Petitioner** | § | |
| | § | **PD-0405-15** |
| **VS** | § | |
| | § | |
| **THE STATE OF TEXAS** | § | |
| | § | |
| **Appellee** | § | |

## PETITION FOR DISCRETIONARY REVIEW

### FROM THE COURT OF APPEALS
### ELEVENTH DISTRICT OF TEXAS
### NO.  11-12-00095-CR

### ORAL ARGUMENT REQUESTED

**Submitted by:**
Parker & Blizzard, P.L.L.C., 702-C Hickory St., Abilene, Texas 79601, Tel. 325-676-1000, Fax. 325-455-8842, Jacob Blizzard for Petitioner.

i

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................... ii

TABLE OF AUTHORITIES ............................................................................ iii

RECORD REFERENCES ................................................................................1

PARTY REFERENCES ...................................................................................1

STATEMENT OF THE CASE..........................................................................2

STATEMENT OF PROCEDURAL HISTORY..................................................3

STATEMENT REGARDING ORAL ARGUMENT ...........................................4

I.     FIRST GROUND FOR REVIEW ...............................................................4

   A.  REASONS FOR REVIEW........................................................................4

   B.  ARGUMENT: ...........................................................................................5

     1.  Failure to request limiting instruction could not be sound trial strategy ......5

     2.  The Court of Appeals analysis of Petitioner's ineffective assistance of
     counsel claim improperly concluded opening the door to Petitioner's prior
     criminal history does not undermine the reliability of the trial.........................8

II.   SECOND GROUND FOR REVIEW ..........................................................10

   A.  REASONS FOR REVIEW......................................................................10

   B.  ARGUMENT: .........................................................................................11

     1.   The Court of Appeal's opinion is in opposition with *Hooper*'s prohibition
     against speculation..............................................................................................11

III.  PRAYER ...................................................................................................14

CERTIFICATE OF SERVICE ........................................................................15

CERTIFICATE OF COMPLIANCE................................................................15

APPENDIX....................................................................................................16

# TABLE OF AUTHORITIES

**Texas Cases**

*Abdnor v. State*, 871 S.W.2d 726 (Tex. Crim. App. 1994)......................................9

*Delgado v. State*, 235 S.W.3d 244 (Tex. Crim. App. 2007).....................................5

*Ex parte Varelas*, 45 S.W.3d 20 (Tex. Crim. App. 2001) ........................................5

*Garcia v. State*, 887 S.W.2d 862 (Tex. Crim. App. 1994) ...................................5, 7

*Hooper v. State*, 214 S.W.3d 9 (Tex. Crim. App. 2007) ........................... 10, 11, 12

*Samaniego v. State*, No. 03-01-00718-CR, 2002 WL 1724016 (Tex. App.—Austin
July 26, 2002, no pet.)......................................................................................13

*Smith v. State,* No. 11–12–00095–CR (Tex. App.—Eastland, delivered January 29,
2015) (not designated for publication) ..............................................................3

*Thompson v. State*, 9 S.W.3d 808 (Tex. Crim. App. 1999).....................................6

**Federal Cases**

*Strickland v. Washington*, 466 U.S. 668 (1984) ........................................... 6, 8, 10

**Rules**

Texas Rules of Appellate Procedure 66.3(b),(c), and (f).................................. 4, 10

## RECORD REFERENCES

The Clerk's Record contains one volume and includes all of the pleadings, orders, and correspondence filed with (or sent to) the trial court and clerk that are pertinent to this petition. References in this brief to the Clerk's Record are by page number, indicated as "CR __." The Reporter's Record contains six volumes. References to the Reporter's Record are by volume, page number, and line number (where applicable), indicated as "RR ___:___:___."

## PARTY REFERENCES

James Smith will be referred to as "Petitioner." The State of Texas will be referred to as the "State." Jacob Blizzard, for Petitioner, will be referred to as "Counsel." Billy L. "Bill" Fisher, trial counsel for Petitioner, will be referred to as "Trial Counsel."

**TO THE HONORABLE COURT OF CRIMINAL APPEALS:**

Comes now, Petitioner, and requests the Court to grant the Defendant's Petition for Discretionary review, allowing full briefing on the issues, hear oral argument of the parties, overturn the court of appeals' decision and the trial court's judgment of guilt, and enter a finding of acquittal in favor of Petitioner, or, in the alternative, remand the case for a new trial on the merits.

## STATEMENT OF THE CASE

Petitioner was indicted for the offense of possession of a controlled substance (Cocaine) in the amount of less than one gram, a State Jail Felony offense, enhanced to a second degree felony through two prior felony enhancements. CR 6.

The case was tried to a jury in the 350th Judicial District Court of Taylor County, Texas beginning on February 27, 2012. RR 4:4. Petitioner filed an election for punishment by the jury. CR 44. Petitioner did not testify during the guilt/innocence phase of the trial, but elected to testify in the punishment phase of trial. The jury found Petitioner guilty on the sole count of the indictment on February 28, 2014. RR 5:39. Trial on punishment was conducted before the jury on February 28, 2014. RR 5:43. The Defendant pled Not True to both enhancement allegations. RR 5:43. The jury found both enhancement allegations to be True and assessed punishment at 8 years confinement and no fine. RR 5:86. Petitioner was

2

sentenced on February 28, 2012. RR 5:90. Petitioner filed his motion for new trial and arrest of judgment on March 2, 2012. CR 64. No hearing was conducted on the motion, and the motion was denied by order of the Court on March 6, 2012. CR 68. Petitioner filed his notice of appeal on March 2, 2012. CR 66.

## STATEMENT OF PROCEDURAL HISTORY

Petitioner's conviction was affirmed on original submission, *Smith v. State,* No. 11–12–00095–CR (Tex. App.—Eastland, delivered January 29, 2015) (not designated for publication). On February 10, 2015, Petitioner filed a motion to extend time to file a motion for rehearing. The Court of Appeals granted Petitioner's motion and set the deadline to file a motion for rehearing on March 9, 2015. Petitioner filed his motion for rehearing on March 6, 2015. On March 12, 2015, the Court of Appeals denied Petitioner's motion for rehearing. Petitioner's Petition for Discretionary Review was due in this Court by April 10, 2015. Petitioner filed a motion for extension of time to file Petition for Discretionary Review. The Court granted Petitioner's motion and set the deadline for submission of his Petition for Discretionary Review to May 13, 2015, and it is therefore timely filed.

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner believes that oral argument would assist this Court in explication and disposition of the issues presented in this petition. Therefore, Petitioner respectfully requests oral argument.

**I.     FIRST GROUND FOR REVIEW:** The Court of Appeals erred by concluding Petitioner did not satisfy the two-prong *Strickland* test where (A) Trial Counsel made an error in failing to request a limiting instruction regarding extraneous offenses to which Trial Counsel accidentally introduced, and (B) there is a probability that the result of the proceeding would have been different had Trial Counsel not opened the door to Petitioner's criminal history and failed to request a limiting instruction.

### A.     REASONS FOR REVIEW

This Court should review the decision of the Court of Appeals under Texas Rules of Appellate Procedure 66.3(b),(c), and (f). The issue of ineffective assistance of counsel is a subject of many criminal appeals and the Court of Criminal Appeals and United States Supreme Court has spoken on the issue numerous times. The Court of Appeals has misapplied the precedents of this Court and the United States Supreme Court to its decision. However, the specific issue of a trial counsel failing to request a limiting instruction after counsel's own error has

4

not been directly addressed by this Court in a direct appeal.[1] Additionally, the Court of Appeals' decision is far departed from the accepted and usual course of judicial proceedings in relationship to the precedents of the Court of Criminal Appeals and the United States Supreme Court.

## B.     ARGUMENT:

### 1.     Failure to request limiting instruction could not be sound trial strategy

The Court of Appeals improperly concluded that Trial Counsel could have engaged in sound trial strategy by his failure to request a limiting instruction. The Court of Appeals points to several cases which stand for the proposition that Trial Counsel can decline to request a limiting instruction with sound discretion. However, each of the cases cited are situations which were not originally errors created by Trial Counsel. In *Delgado v. State*, 235 S.W.3d 244, 250 (Tex. Crim. App. 2007), cited by the Court of Appeals, the evidence offered was same transaction contextual evidence offered by the State. In *Garcia v. State*, 887 S.W.2d 862 (Tex. Crim. App. 1994), the evidence was offered by the State and not objected to by trial counsel. Petitioner does not know of a case where the trial counsel himself solicited the harmful information in error and then engaged in sound trial strategy to decline requesting a limiting instruction. The error in and of itself lacks sound trial strategy. Any action following from Trial Counsel's original

---

[1] Although *Ex parte Varelas*, 45 S.W.3d 20 (Tex. Crim. App. 2001) addresses the issue on writ of habeas corpus review.

5

error is analogous to "fruit of the poisonous tree," in that Trial Counsel could not have engaged in sound trial strategy thereafter because Trial Counsel caused the problem which he then faced, both of which were harmful. Therefore, any choice made by Trial Counsel which rises to the level of prejudice under *Strickland* is sufficient to warrant a reversal of Petitioner's conviction. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The prejudice is demonstrated when the petitioner shows "a probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

Here, had Trial Counsel not opened the door to Petitioner's criminal history/extraneous offenses, the jury more likely would have believed Petitioner's other defenses raised, the defensive theory that the substance was not cocaine when seized from Petitioner by police and that it was altered, tampered, or substituted with cocaine at a later date for testing. However, the Petitioner's primary defense was severely diminished by his own counsel, because the jury had no limits and no guidance on prior arrests which were brought up by his own counsel in error.[2]

Trial Counsel's choice or oversight, failing to request a limiting instruction did not limit the impact to the jury as was the trial strategy in *Garcia*, rather here

---

[2] Trial Counsel's other errors, not objecting the State's exhibit 2 based on chain of evidence and allowing testimony on a field test, contributed to the self-inflicted dismantling of Petitioner's defense.

the extraneous offense was discussed at length and the details further hashed out. *See Garcia v. State*, 887 S.W.2d 862, 881 (Tex. Crim. App. 1994). The Court of Appeals reasoned that Trial Counsel could have elected not to request the limiting instruction because he did not want to call attention to it, however, Trial Counsel went on the discuss the extraneous offenses in more detail. *Garcia* was specifically dealing with evidence that was offered by the State, which was not introduced through the error of Trial Counsel. *See id.* The decision to not draw attention to State's evidence is a reasonable trial strategy, while the decision not to request a limiting instruction to Trial Counsel's own error solicited information is not sound trial strategy.

Additionally, it could not have been sound trial strategy not to request a limiting instruction which would have prohibited the jury from considering the extraneous offenses unless they were proven beyond a reasonable doubt. The jury would have been prohibited from considering the extraneous offenses because there was no proof to establish the extraneous offenses were committed beyond a reasonable doubt. Only the arrests were discussed. RR Vol. 4, Pg. 41 Line 18 – Pg. 43 Line 10, Pg. 56, Lines 22-25, and Pg. 58. In *Garcia*, Trial Counsel did not request a limiting instruction which would limit the impact of certain testimony, but would call attention to it in the jury charge. Here, the result is the opposite. Trial Counsel's request for the limiting instruction would have effectively cured

most of Trial Counsel's error. The jury would be instructed to disregard the evidence because it was not proven beyond a reasonable doubt. Therefore, the request for a limiting instruction is the only sound strategy which could have been taken given Trial Counsel's initial error.

**2.     The Court of Appeals analysis of Petitioner's ineffective assistance of counsel claim improperly concluded opening the door to Petitioner's prior criminal history does not undermine the reliability of the trial**

Opening the door to Petitioner's criminal history created a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. The Court of Appeals, in its opinion acknowledges that Trial Counsel made a mistake in opening the door to Petitioner's criminal history, satisfying the first prong of the *Strickland* test, but then fails to meaningfully address the second prong of *Strickland* to determine that a reasonable probability exists that, but for counsel's error, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687. Petitioner's trial strategy was significantly impaired and made to be less believed because Trial Counsel was alleging a theory which was based upon the fabrication or tampering of evidence. However, evidence related to prior drug possession and distribution cases was offered into evidence, and such evidence prejudiced the jury against Petitioner based on prior unproven conduct. RR Vol. 4, Pg. 58.

8

Additionally, the Court of Appeals stated that it is essentially plain error to open the door to the past criminal history, but it is not a plain error to not request the limiting instruction. The Court of Appeals fails to acknowledge, however, that the position of being forced to make the supposed strategic decision was created by the error of counsel. But for Trial Counsel's mistake, there would be no evidence of extraneous conduct revealed. Under *Abdnor v. State*, 871 S.W.2d 726 (Tex. Crim. App. 1994), some harm is presumed when a properly requested limiting instruction is not given. The *Abdnor* Court notes "'the presence of *any* harm, regardless of degree . . . is sufficient to require a reversal of the conviction. *Id.* Cases involving preserved charging error will be affirmed only if *no* harm has occurred.' *Arline,* 721 S.W.2d at 351." *Abdnor*, 871 S.W.2d at 732. Further, the Court states that "We have consistently acknowledged that the introduction of extraneous offenses to the jury is inherently 'prejudicial.'" *Id.* at 738. It cannot be the state of the law that it is harmful error for a trial court to deny a properly requested limiting instruction, but not harmful error when trial counsel does not request the same limiting instruction. While the harm analysis for limiting instructions and ineffective assistance of counsel claims are different, in this situation they overlap. The failure to request a limiting instruction is "some harm," but then the question comes, is it harm sufficient to establish "a probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Strickland*, 466 U.S. at 694. If it is some harm sufficient to warrant a reversal had the requested instruction been requested and improperly denied, then it naturally follows that the proceedings probably would have would have been different because of the prejudicial nature of the extraneous offenses against which a limiting instruction is intended to protect. At a minimum Petitioner would preserve his appellate rights on the jury charge if the judge denied Trial Counsel's request. A limiting instruction cannot be so valuable that it must be given or harm is presumed, but then be of so little value that the failure to request it does not affect the outcome of the case.

**II.    SECOND GROUND FOR REVIEW:** The Court of Appeals erred by allowing a conviction with legally insufficient evidence to stand on speculation in violation of *Hooper v. State*.

### A.    REASONS FOR REVIEW

This Court should review the decision of the Court of Appeals under Texas Rules of Appellate Procedure 66.3(b),(c), and (f). The issue of legally insufficient evidence as it relates to the jury ability to either draw inferences from the evidence or speculate has been addressed by this Court in several decisions. *Hooper v. State*, 214 S.W.3d 9 (Tex. Crim. App. 2007) stands as the on point case to describing the difference between allowed inference and speculation. The Court of Appeals decision stands in opposition of the *Hooper* decision. The particular facts in this

case give rise to an important issue of Texas and federal jurisprudence and should be decided by this Court because there is not clear case law to demonstrate what constitutes a showing of tampering sufficient to either exclude evidence or render the evidence legally insufficient. Additionally, the Court of Appeals' decision is far departed from the accepted and usual course of judicial proceedings in relationship to the precedents of the Court of Criminal Appeals and the United States Supreme Court.

## B. ARGUMENT:

### 1. The Court of Appeal's opinion is in opposition with *Hooper*'s prohibition against speculation

The concept that the jury can make reasonable inferences is subject to the reasonable inferences that may be deduced from the evidence. *Hooper*, 214 S.W.3d at 16. The jury is not allowed to draw conclusions based on speculation. *Id.* The Court of Criminal Appeals in *Hooper* gave the following hypothetical to distinguish between inferences and speculation:

> A woman is seen standing in an office holding a smoking gun. There is a body with a gunshot wound on the floor near her. Based on these two facts, it is reasonable to infer that the woman shot the gun (she is holding the gun, and it is still smoking). Is it also reasonable to infer that she shot the person on the floor? To make that determination, other factors must be taken into consideration. If she is the only person in the room with a smoking gun, then it is reasonable to infer that she shot the person on the floor. **But, if there are other people with smoking guns in the room, absent other evidence of her guilt,**

11

**it is not reasonable to infer that she was the shooter. No rational juror should find beyond a reasonable doubt that she was the shooter, rather than any of the other people with smoking guns. To do so would require impermissible speculation.** But, what if there is also evidence that the other guns in the room are toy guns and cannot shoot bullets? Then, it would be reasonable to infer that no one with a toy gun was the shooter. It would also be reasonable to infer that the woman holding the smoking gun was the shooter. This would require multiple inferences based upon the same set of facts, but they are reasonable inferences when looking at the evidence. We first have to infer that she shot the gun. This is a reasonable inference because she is holding the gun, and it is still smoking. Next, we have to infer that she shot the person on the floor. This inference is based in part on the original inference that she shot the gun, but is also a reasonable inference drawn from the circumstances.

*Id.* at 16. (emphasis added).

In Petitioner's case no evidence or testimony was offered to explain a variation in or substitution of the substance from the time of the seizure to the time of trial. At the time of the testing the substance was different from the original substance. RR 4:20:15-19 & 54:5-22. The evidence submitted for testing was a powder, while the evidence seized were small rocks. RR 5:12:9-15.

The Court of Appeals opinion focuses on that the method of securing the substance from seizure to testing and testing to trial. However, the Court neglects to address what Petitioner focused on at trial, that the substance was tampered with and/or replaced with another substance prior to securing it in the evidence locker. RR 5:34-35. At trial, Petitioner made the point that Officer Shriver took the substance off camera, and then called the substance bb sized rocks, but then later a

12

powder was submitted. RR 5:34-35.

The Court of Appeals states that the jury could have reasonably believed that the substance had broken down, referencing *Samaniego v. State*, No. 03-01-00718-CR, 2002 WL 1724016 (Tex. App.—Austin July 26, 2002, no pet.) for the proposition that a showing that the substance changed between the time of seizure and trial is not sufficient to show tampering. However, this assertion by the Court would require more than reasonable inferences, but actually call for speculation on the part of the jury. The Court of Appeals erred in its reasoning and reference to the *Samaniego* decision, because in *Samaniego* testimony was offered to explain why the substance had changed form. *Id.* at *3-4. Here, the jury had to speculate that the substance could have broken down, without any evidence of such a possibility. Such an inference requires the knowledge and testimony of an expert or at least a lay person who personally observed the breakdown of the substance. Such a call for speculation from the jury means that the State can present any substance no matter the form and expect the jury to find that it is the same. If the substance was a different color, the jury could speculate that it was burned. If the substance was larger, the jury could speculate that such a substance was subject to expansion from heat. If the substance was not present at all, the jury could speculate that the substance was used up in testing.

Here, the jury could not have reasonably believed that the substance broke

13

down to a powder without any evidence to support that conclusion, because as in the *Hooper* hypothetical, there are more possibilities than the substance had transformed from a rock to a powder. There is the possibility of tampering and the jury was given no evidence that there was not tampering. The change in the substance itself without explanation is evidence of tampering on its face. In this case, there are two smoking guns with no evidence from the State to suggest which smoking gun was fired at the body on the floor. Here, the State produced no evidence to suggest that the substance had broken down due to transport or testing, therefore there is no evidence upon which the jury could have made a reasonable inference that the break down was from transport or testing.

## III.   PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Petitioner, and requests the Court to grant the Defendant's Petition for Discretionary review, allowing full briefing on the issues, hear oral argument of the parties, overturn the court of appeals' decision and the trial court's judgment of guilt, and enter a finding of acquittal in favor of Petitioner, or, in the alternative, remand the case for a new trial on the merits.

Respectfully submitted,

PARKER & BLIZZARD P.L.L.C.
702-C Hickory St.
Abilene, Texas 79601
Tel:  (325) 676.1000
Fax:  (325) 455.8842


By:*/s/ Jacob Blizzard*
Jacob Blizzard
State Bar No. 24068558

**ATTORNEY FOR APPELLANT**

**CERTIFICATE OF SERVICE**

This is to certify that on May 13, 2015, a true and correct copy of the above and foregoing document was served on the Taylor County District Attorney's Office, Taylor County, Texas, by facsimile transmission to (325) 674-1261 and the State Prosecuting Attorney by facsimile transmission to (512) 463-5724.

*/s/ Jacob Blizzard*
Jacob Blizzard


**CERTIFICATE OF COMPLIANCE**

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains 2929 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1).

*/s/ Jacob Blizzard*
Jacob Blizzard

15

# APPENDIX



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00095-CR

_____

## JAMES WILLIAM SMITH, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 350th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 10035-D**

## MEMORANDUM OPINION

The jury found James William Smith, Appellant, guilty of the offense of possession of cocaine.[1]  The jury found that Appellant had two prior felony convictions for possession of cocaine and assessed punishment at confinement for

---

[1]_See_ TEX. HEALTH & SAFETY CODE ANN. § 481.102(3)(D) (Penalty Group 1), § 481.115(b) (Offense: Possession of Substance in Penalty Group 1) (West 2010).

eight years. The trial court sentenced Appellant accordingly. Appellant challenges the sufficiency of the evidence to support his conviction, and he also asserts that he received ineffective assistance of counsel. We affirm.

## I. *The Charged Offense*

The grand jury indicted Appellant for possession of less than one gram of cocaine with two prior felony convictions for possession of cocaine. Appellant's first prior conviction was a third-degree felony, and his second prior conviction was a second-degree felony.

A person commits the offense of possession of cocaine if he intentionally or knowingly possesses cocaine. HEALTH & SAFETY §§ 481.102(3)(D), 481.115(a). Possession of less than one gram of cocaine is a state jail felony. HEALTH & SAFETY § 481.115(b). A state jail felony with two prior felony convictions becomes punishable as a second-degree felony, which shall be punished by imprisonment "for any term of not more than 20 years or less than 2 years" and an optional fine "not to exceed $10,000."[2] TEX. PENAL CODE ANN. § 12.33 (West 2011) (Second Degree Felony Punishment), § 12.425(b) (West Supp. 2014) (Penalties for Repeat and Habitual Felony Offenders on Trial for State Jail Felony).

Appellant pleaded "not guilty" and proceeded to trial.

## II. *Evidence at Trial*

Cati Schriver, a detective with the Abilene Police Department, testified that she pulled Appellant over because she "thought [Appellant] would possibly be intoxicated." Detective Schriver testified that she turned on her "Coban" when she began following Appellant and that the video accurately depicted what happened.[3]

---

[2]The two previous convictions must not be state jail felony convictions, and the second previous conviction must have occurred subsequent to the first previous conviction. PENAL § 12.425(b).

[3]Detective Schriver explained that a "Coban" is a camera system mounted behind the rearview mirror of the police car that records audio and video.

She called for a K-9 officer, and Officer Kevin Easley arrived five to seven minutes later. She also performed a horizontal gaze nystagmus test on Appellant and believed that he was not intoxicated.

Officer Easley, a K-9 handler with the City of Abilene, had a K-9 named Rocco at the time of Appellant's arrest in this case. Officer Easley testified that he received a call for a K-9 officer for a traffic stop, that Officer Schriver was the officer involved, and that Appellant was the citizen who was stopped. Officer Easley did not remember any other officers or citizens present. Officer Easley advised Detective Schriver that the dog gave a positive alert; whereupon, Detective Schriver searched Appellant. Detective Schriver testified that she found "small off-white rock substances" in Appellant's shirt pocket that she believed was crack cocaine.

Officer Easley testified that Rocco alerted to a piece of plastic on the ground near Appellant's pickup and to the driver's door of Appellant's pickup. Officer Easley testified that, after Rocco made a positive alert, Officer Easley searched Appellant's pickup but did not find any drugs. He said that Detective Schriver reported that she found "some small objects" on Appellant and that they suspected it was crack cocaine. He also said that he tested the substance that Detective Schriver seized from Appellant's shirt pocket and that it tested positive for cocaine.

Detective Schriver testified that State's Exhibit No. 2 was the same envelope that she signed into evidence into which she had placed the rocklike substance that she took from Appellant's shirt pocket. She placed a clear piece of tape on the back of the envelope with her initials "half on half off the tape" to make it obvious if anyone "breaks that seal" "because it won't line up anymore." After she signed the envelope, she locked it in the evidence vault. One of three evidence clerks moved it from the small vault lockbox "into the bigger," and that person's name appeared on the envelope. Detective Schriver said that she knew the envelope was

3

delivered to the "Texas Department of Safety's laboratory" for analysis because two seals appeared on the envelope: the person who took it from the police department placed one seal, and the person who received it at the lab placed the other seal. She also said that Jimmy Seals's name appeared on the seal that showed Seals took the envelope from the police department to the lab.

On cross-examination, Detective Schriver testified that she pulled Appellant over for weaving and speeding. Appellant's trial counsel subsequently asked Detective Schriver, "What caused you to go from speeding and weaving to drug possession? . . . What about that event caused you to think that . . . you needed to search him or his vehicle for drugs?" Detective Schriver answered, "Whenever we stop somebody, we run their name through our system and I could see previous history of drug possession." Appellant's trial counsel objected to Detective Schriver's answer and explained, "[T]he witness has testified to my client's prior record. . . . And we're in the guilt and innocence phase of this, Your Honor. There is no place for us to be getting into his prior record at this point." The trial court responded, "You opened the door . . . . That question just begs for that response," and overruled the objection.

Detective Schriver also testified on cross-examination that she had stopped Appellant once prior to this stop, had called the drug dog, had searched Appellant, and had not found any drugs in Appellant's vehicle or on his person during the prior stop. She agreed that she had made a mistake about drug possession the previous time she pulled Appellant over. She also agreed that she was mistaken during the second stop when she thought that Appellant was intoxicated. She said that the objects found in Appellant's shirt pocket were "small pieces of an off-white rocklike substance" "approximately the size of a BB," that "there was more than one," and that "[t]hey were all small. They looked as if maybe they had crumbled."

4

William Chandley, a chemist with the drug section of the Department of Public Safety's crime lab, testified that he recognized the envelope labeled as State's Exhibit No. 2, that he tested the substance contained in it, and that Appellant's name appeared as the suspect on the report and the submission form. Chandley testified that he received the envelope from Seals, the "evidence person" for the Abilene Police Department. Chandley testified that the envelope did not "appear to have been tampered with in any way" when he received it. Chandley testified that he analyzed the contents of the envelope and determined that it contained .03 grams of cocaine. On cross-examination, Chandley testified that State's Exhibit No. 2 contained a powder and that he received it from the police department in powder form.

Detective Schriver's "Coban" video showed that she followed Appellant.[4] Officer Easley and Rocco walked around Appellant's pickup after Detective Schriver pulled Appellant over. Rocco looked back and forth from the ground to Officer Easley. Officer Easley picked up something that was on the ground and searched the cab of Appellant's pickup.

The video also showed that Detective Schriver performed the horizontal gaze nystagmus test on Appellant while the K-9 unit walked around and searched the pickup. Detective Schriver determined that Appellant was not intoxicated while Officer Easley searched the cab of Appellant's pickup. Detective Schriver subsequently began to search Appellant. Detective Schriver pulled out several objects, including a razor blade, from Appellant's shirt pocket. Detective Schriver talked with Officer Easley about what she had found. Detective Schriver arrested Appellant and told him that the "little white rocks" she had pulled out of his shirt "tested positive."

---

[4]The record shows that both the State and Appellant agreed to stop the video at a certain point, but the record does not state when. We will describe the pertinent facts contained in the video.

### III. *Issues Presented*

Appellant presents two points of error on appeal. In the first point, he challenges the sufficiency of the evidence to convict him. In the second point, he asserts that he received ineffective assistance of counsel.

### IV. *Standard of Review*

We apply the sufficiency standard outlined in *Jackson* and its progeny to Appellant's sufficiency point. *Jackson v. Virginia*, 443 U.S. 307, 318 (1979); *Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We review all of the evidence introduced by both the State and Appellant in the light most favorable to the jury's verdict and decide whether any rational jury could have found each element of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. We rely on the jury to resolve conflicts in the evidence, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *See id.* We review all evidence, whether the trial court properly or improperly admitted it. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). With respect to Appellant's complaint of ineffective assistance of counsel, we apply the well-recognized standard of review from *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

### V. *Analysis*

#### A. *Point One: Sufficiency of the evidence*

Appellant challenges the sufficiency of the evidence to support his conviction because the State, he asserts, did not prove the chain of custody of the cocaine. He complains that a break in the chain of custody existed between Detective Schriver, who booked the substance into police evidence, and Chandley, who received the substance at the lab. Appellant asserts that the change from the "rocklike substance" that Detective Schriver seized from Appellant's shirt pocket to the "powder" that the lab received "gives rise to an inference that tampering or

alteration took place." Appellant did not object to the admission of State's Exhibit No. 2 and does not challenge its admission on appeal.

The evidence showed that Rocco made a positive alert for drugs on the piece of plastic that fell to the ground. Detective Schriver subsequently searched Appellant and found crumbled, off-white rocklike pieces of what she thought was crack cocaine in his shirt pocket. Officer Easley performed a preliminary field test on the rocklike substance, and it tested positive for cocaine.

Detective Schriver placed the rocklike substance that she took from Appellant's shirt pocket into an envelope; signed her name on the envelope, along with her initials and the date of the arrest; and placed tape on the back with her initials "half on half off the tape." Detective Schriver locked the envelope in the evidence vault, and the clerk's name appeared on the envelope along with a seal that showed that Seals took the envelope to the DPS lab. State's Exhibit No. 2 was that same envelope, and the case number on the envelope corresponded with Appellant's case. Chandley received the envelope from Seals and testified that it had not been tampered with. Chandley tested the substance in the envelope and found that it contained .03 grams of cocaine.

No evidence in the record indicated that anyone tampered with the envelope; therefore, the jury was free to infer that the crumbled, rocklike substance became a powder between the time Detective Schriver booked it into evidence and the time Chandley received it at the lab. *See Jackson*, 443 U.S. at 319; *see, e.g.*, *Samaniego v. State*, No. 03-01-00718-CR, 2002 WL 1724016, at *4 (Tex. App.—Austin July 26, 2002, no pet.) (not designated for publication) (holding that "[t]here is no reason to believe the evidence did not simply deteriorate by breaking down from 'rock' form to granular form over the time between the seizure and its presentation at trial"). The evidence was sufficient for a rational jury to find beyond a

reasonable doubt all of the elements of the offense of possession of cocaine by Appellant. *See Jackson*, 443 U.S. at 319. We overrule Appellant's first point.

*B. Point Two: Ineffective assistance of counsel*

Appellant asserts that he received ineffective assistance from his trial counsel. Specifically, Appellant complains that his trial counsel's performance was deficient because counsel opened the door to Appellant's criminal history, failed to request a limiting instruction or jury instruction in the charge, "failed to object or preserve error for appeal on the issue of chain of custody or admission of the substance alleged to be cocaine," and "failed to object to or file a pretrial motion to exclude the mention or use of field tests."

The benchmark for evaluating an ineffective-assistance-of-counsel claim is whether counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. The *Strickland* test has two prongs: (1) a performance standard and (2) a prejudice standard. *Id.* at 687. For the performance standard, we must determine whether Appellant has shown that counsel's representation fell below an objective standard of reasonableness. *Id.* If so, we then determine whether there is a reasonable probability that the outcome would have differed but for counsel's errors. *Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *Strickland*, 466 U.S. at 686; *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005).

The reasonable probability must rise to the level that it undermines confidence in the outcome of the trial. *Isham v. State*, 258 S.W.3d 244, 250 (Tex. App.—Eastland 2008, pet. ref'd). A failure to make a showing under either prong of the *Strickland* test defeats a claim of ineffective assistance of counsel. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010); *Andrews*, 159 S.W.3d at 101. A reviewing court need not consider both prongs of the *Strickland* test and can

dispose of an ineffectiveness claim on either prong. *Walker v. State*, 406 S.W.3d 590, 594 (Tex. App.—Eastland 2013, pet. ref'd) (citing *Cox v. State*, 389 S.W.3d 817, 819 (Tex. Crim. App. 2012)); *see Strickland*, 466 U.S. at 697.

The first prong of *Strickland* requires Appellant to establish that trial counsel provided deficient assistance of counsel. There is a strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Isham*, 258 S.W.3d at 250. To overcome this deferential presumption, an allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). In most cases, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Id.* Appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *Hayden v. State*, 155 S.W.3d 640, 648 (Tex. App.—Eastland 2005, pet. ref'd). Generally, the record on direct appeal will not be sufficient to show that trial counsel's representation was so lacking as to overcome the presumption of reasonable conduct. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

We do not inquire into trial strategy unless no plausible basis exists for trial counsel's actions. *Johnson v. State*, 614 S.W.2d 148, 152 (Tex. Crim. App. [Panel Op.] 1981). When the record contains no evidence of the reasoning behind trial counsel's actions, we cannot conclude that counsel's performance was deficient. *Jackson*, 877 S.W.2d at 771. If trial counsel cannot explain the challenged actions, then we will not conclude that those actions constituted deficient performance unless they were so outrageous that no competent attorney would have engaged in

them. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003).

### 1. Opening the door

Evidence of other crimes, wrongs, or acts is inadmissible at the guilt/innocence phase of trial to show the accused's conformity with those other acts. TEX. R. EVID. 404(b); *Lockhart v. State*, 847 S.W.2d 568, 570 (Tex. Crim. App. 1992). An accused may make otherwise inadmissible evidence admissible, however, by "opening the door" through questions that elicit testimony about the extraneous offenses. *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

The record shows that Appellant's trial counsel unintentionally elicited testimony about Appellant's criminal history. The trial court admitted that testimony over counsel's objections, ruling that counsel had "opened the door by the nature of [his] question in this proceeding." Appellant has failed to show by a preponderance of the evidence that a reasonable probability exists that, but for counsel's error, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687.

### 2. Limiting instruction

Appellant complains that he was prejudiced when his trial counsel did not request a limiting instruction subsequent to his opening the door to extraneous offenses. Appellant cites to *Ex parte Varelas*, 45 S.W.3d 627, 631–32 (Tex. Crim. App. 2001), to support his position. In *Varelas*, the defendant's counsel failed to request a burden of proof or limiting instruction after the trial court admitted State-offered evidence of an extraneous offense. 45 S.W.3d at 631. In *Varelas*, a habeas proceeding, the Court of Criminal Appeals had before it an affidavit from Varelas's trial counsel regarding his oversight, as opposed to trial strategy, in failing to request a limiting instruction. *Id.* at 632. Moreover, the Court of

10

Criminal Appeals in *Varelas* recognized that the appellate record on direct appeal is usually inadequate to develop a claim of ineffective assistance. *Id.* at 629–30. Without evidence in the record, we will not speculate why Appellant's trial counsel did not request a limiting instruction. *See Delgado v. State*, 235 S.W.3d 244, 250 (Tex. Crim. App. 2007) (noting that "the decision of whether to request a limiting instruction concerning the proper use of certain evidence, including extraneous offenses, may be a matter of trial strategy"); *Johnson*, 614 S.W.2d at 152; *cf. Ex parte Varelas*, 45 S.W.3d at 632 (using affidavit from trial counsel in habeas proceeding to determine whether actions at trial were result of trial strategy). We cannot conclude, based on a silent record, that counsel's failure to request a limiting instruction was deficient; nor can we conclude that it was so outrageous that no competent attorney would do likewise. *See Jackson*, 877 S.W.2d at 771 (holding that lack of evidence in record of trial counsel's reasons for actions precludes court from concluding that trial counsel's performance was deficient); *see, e.g.*, *Garcia v. State*, 887 S.W.2d 862, 881 (Tex. Crim. App. 1994) (holding that counsel's decision to not request a limiting instruction was not an unreasonable trial strategy because a request may have drawn "more attention to the incriminating evidence").

### 3. Chain of custody

The State offered State's Exhibit No. 2, which contained cocaine, without objection from Appellant's trial counsel. The record does not explain why Appellant's trial counsel did not object to State's Exhibit No. 2; therefore, we cannot conclude that his actions were deficient. *See Jackson*, 877 S.W.2d at 771. Counsel's actions were not so outrageous that a competent attorney would have done otherwise. *See Goodspeed*, 187 S.W.3d at 392; *see, e.g.*, *O'Donoghue v. State*, No. 13-09-329-CR, 2010 WL 2783746, at *5 (Tex. App.—Corpus Christi July 15, 2010, pet. ref'd) (mem. op., not designated for publication) (holding that

11

trial counsel's failure to object to the chain of custody of certain evidence was not outrageous).

#### 4. Field test

Appellant's trial counsel did not object to any testimony related to Officer Easley's field test of the substance that Detective Schriver seized from Appellant, and no evidence exists in the record to show why Appellant's trial counsel acted in this manner. Without such evidence, we cannot conclude that his actions were deficient. *See Jackson*, 877 S.W.2d at 771. Counsel's actions were not outrageous because Chandley's testimony that the substance tested positive for cocaine would make the introduction of the field test harmless error. *See Goodspeed*, 187 S.W.3d at 392; *Bonner v. State*, No. 11-93-159-CR, 1994 WL 16189698, at *2 (Tex. App.—Eastland Dec. 1, 1994, pet. ref'd) (not designated for publication) (citing *Hicks v. State*, 545 S.W.2d 805, 809–10 (Tex. Crim. App. 1977)) (holding that "any error brought about by counsel's failure to object [to an inadmissible field test] was rendered harmless upon the introduction of . . . the chemist's report"). For counsel's actions or omissions related to the limiting instruction, the chain of custody, and the field test, we do not reach the prejudice prong of *Strickland* because Appellant has failed to satisfy the deficient-performance prong. *See Perez*, 310 S.W.3d at 893. We overrule Appellant's second point.

### VI. *Conclusion*

After reviewing the record, we hold that there was sufficient evidence for a rational jury to have found beyond a reasonable doubt all of the elements for the offense of possession of cocaine by Appellant. *See Jackson*, 443 U.S. at 318. We also hold that Appellant has not satisfied both prongs under *Strickland* as required to sustain his claim of ineffective assistance of counsel. *See Strickland*, 466 U.S. at 686.

12

## VII. *This Court's Ruling*

We affirm the judgment of the trial court.


MIKE WILLSON

JUSTICE


January 29, 2015

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

Print this page

# Case # PD-0405-15

## Case Information

| | |
|---|---|
| Location | Court Of Criminal Appeals |
| Date Filed | 05/13/2015 06:43:26 PM |
| Case Number | PD-0405-15 |
| Case Description | |
| Assigned to Judge | |
| Attorney | Jacob Blizzard |
| Firm Name | Parker & Blizzard P.L.L.C. |
| Filed By | Jacob Blizzard |
| Filer Type | Not Applicable |

## Fees

| | |
|---|---|
| Convenience Fee | $0.09 |
| Total Court Case Fees | $0.00 |
| Total Court Filing Fees | $0.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $0.00 |
| Total Service Tax Fees | $0.00 |
| Total Provider Service Fees | $3.00 |
| Total Provider Tax Fees | $0.25 |
| Grand Total | $3.34 |

## Payment

| | |
|---|---|
| Account Name | 4357609219612990 |
| Transaction Amount | $3.34 |
| Transaction Response | |
| Transaction ID | 8660029 |
| Order # | 005276382-0 |

## Petition for Discretionary Review

| | |
|---|---|
| Filing Type | EFile |
| Filing Code | Petition for Discretionary Review |
| Filing Description | Petition for Discretionary Review |
| Reference Number | 1234 |
| Comments | |
| Status | Rejected |

## Fees

| | |
|---|---|
| Court Fee | $0.00 |
| Service Fee | $0.00 |

## Rejection Information

| Rejection Reason | Time | Rejection Comment |
|---|---|---|
| Other | 05/15/2015 11:27:05 | The petition for discretionary review does not contain the identity of Judge, Parties and Counsel [Rule 68.4(a)]. You have ten days to tender a corrected petition for |

AM            discretionary review.

## Documents

*Lead Document*            Pet. for Disc. Rev. w. opinion.pdf                    [Original]