**Opinion filed March 21, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00122-CR
_____

## DONJEL LAMONT WALKER, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 266th District Court**

**Erath County, Texas**

**Trial Court Cause No. CR13673**

### O P I N I O N

The jury found Appellant, Donjel Lamont Walker, guilty of delivery of methamphetamine in an amount greater than four grams but less than 200 grams. Appellant pleaded true to an enhancement alleged in the indictment. The jury assessed punishment at confinement for sixty years and a $6,000 fine, and the trial court sentenced him accordingly. Appellant challenges his sentence in three issues. We affirm.

### I. Issues on Appeal

Appellant brings three issues on appeal, and they all stem from the punishment phase of his trial. He first alleges that the trial court erred when it allowed a State's witness, Lisa Martinez, to testify about extraneous offense statements that her common-law husband, Cody

Dean Mourett, made to her. Specifically, Appellant asserts that the trial court violated both the Rules of Evidence and the Confrontation Clause[1] when it admitted the evidence. We will address these two issues together because they concern the same alleged error. Appellant next claims ineffective assistance of counsel during punishment on two grounds: (1) his trial counsel failed to object to the testimony of Officers James Luckie and Ray Miller and (2) his trial counsel failed to object to the prosecution's impermissible closing argument.

## II. Standards of Review

We review a trial court's decision to admit evidence under an abuse of discretion standard. *Wall v. State*, 184 S.W.3d 730, 743 (Tex. Crim. App. 2006); *Render v. State*, 347 S.W.3d 905, 917 (Tex. App.—Eastland 2011, pet. ref'd). We review the trial court's evidentiary ruling on hearsay exceptions under an abuse of discretion standard. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003) ("The admissibility of an out-of-court statement under the exceptions to the general hearsay exclusion rule is within the trial court's discretion."). The trial court's ruling will not be reversed unless it falls outside the "zone of reasonable disagreement." *Salazar v. State*, 38 S.W.3d 141, 151 (Tex. Crim. App. 2001). However, when we review a Confrontation Clause objection, we review that issue de novo. *Wall*, 184 S.W.3d at 742–43.

The standard of review for Appellant's complaint of ineffective assistance of counsel is whether counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The *Strickland* test has two prongs: (1) a performance standard and (2) a prejudice standard. *Id.* at 687.

For the performance standard, we must determine whether Appellant has shown by a preponderance of the evidence that counsel's representation fell below an objective standard of reasonableness. *Id.* at 687. There is a strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Isham v. State*, 258 S.W.3d 244, 250 (Tex. App.—Eastland 2008, pet. ref'd). To overcome this deferential presumption, an allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). "[T]rial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d

---

[1]U.S. CONST. amend. VI.

107, 111 (Tex. Crim. App. 2003). When the record contains no direct evidence of counsel's reasons for the challenged conduct, we "will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). We "will not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

For the prejudice standard, we determine whether there is a reasonable probability that the outcome would have differed but for counsel's errors. *Wiggins v. Smith*, 539 U.S. 510 (2003); *Strickland*, 466 U.S. at 686; *Andrews v. State*, 159 S.W.3d 98 (Tex. Crim. App. 2005). The reasonable probability must rise to the level that it undermines confidence in the outcome of the trial. *Isham*, 258 S.W.3d at 250.

A reviewing court need not consider both prongs of the *Strickland* test and can dispose of an ineffectiveness claim if the defendant fails to demonstrate sufficient prejudice. *Cox v. State*, 389 S.W.3d 817, 819 (Tex. Crim. App. 2012) (citing *Strickland*, 466 U.S. at 697).

### III. The Evidence at Trial

Sergeant Curtis Lee Dees worked in the narcotics division of the Stephenville Police Department. Sergeant Dees testified that the department engineered a controlled purchase of methamphetamine through a confidential informant (CI). The CI contacted Bradley Keith Collins to purchase methamphetamine. Collins met her at Tasha Bryant's home. Bryant arrived home, and the three went inside. Neither Collins nor Bryant actually had the methamphetamine; they were waiting for a third person, Appellant, to deliver it to them. Collins and Bryant acted as middlemen, handling the exchange between the CI and Appellant for a share of the profit. Following the handoff between Appellant and Collins, Appellant spoke with the CI directly and offered to drop the price by cutting out the middlemen. Bryant, Collins, and Appellant were all charged in connection with this controlled purchase.

### IV. Extraneous Offense Evidence Raised at Punishment Phase

The trial court heard argument on the admissibility of Martinez's testimony at the punishment phase while the jury was deliberating on guilt/innocence. The State argued that Martinez would testify to statements made to her by Mourett that implicated Appellant. Defense counsel responded that the admission of Martinez's testimony would violate both the Rules of Evidence and the Confrontation Clause. The State argued that the statements were an exception

to hearsay as statements against penal interest from a potential codefendant and that the statements were nontestimonial because Martinez was not acting for the State when Mourett contacted her. The trial court made a preliminary ruling that the testimony was admissible.

After the return of the guilty verdict, the State presented four officers to testify to an extraneous offense in Hood County. Officer Jeff Hastings of the Granbury Police Department testified that he initiated a traffic stop on a vehicle that was involved in a hit-and-run. The vehicle was driven by Nicole Rachell Cehand; Appellant and Mourett were passengers. Officer Hastings called for a canine search based on the behavior of the vehicle's occupants. Officer Justin William McGuire, a canine handler for the Granbury Police Department, testified that his dog alerted to the presence of drugs in the vehicle. A subsequent search revealed a small amount of methamphetamine and a large amount of drug paraphernalia. Officer Hastings arrested Appellant for possession of a small amount of methamphetamine and impounded the vehicle. Appellant stated that the things in the car belonged to him and that the others were helping him move.

Defense counsel then entered a running objection to the subsequent "line of new questioning . . . based on . . . charges [] not pursued in Hood County." The trial court overruled the objection and allowed the testimony of Officers Luckie and Miller. Officer Luckie was a narcotics investigator with the Hood County Sheriff's Office. Officer Miller was also a narcotics investigator for the Hood County Sheriff's Office.

Officer Luckie testified that he received information from a confidential informant, Martinez, that a large amount of methamphetamine remained undiscovered in the impounded vehicle. Officer Miller stated that he was contacted by Martinez about undetected methamphetamine in a vehicle that was impounded pursuant to an arrest by the Granbury Police Department. Officer Luckie stated that Martinez provided a sworn statement as the confidential informant. Officer Miller stated that the information was sufficiently detailed to describe the type of controlled substance and its actual location and packaging inside the impounded vehicle.

Officer Luckie requested a canine search on the impounded vehicle. The dog alerted positively to the presence of narcotics, and Officer Luckie obtained a search warrant. The search revealed approximately thirty-four grams of methamphetamine in a potato chip bag, exactly as Martinez had described.

4

The trial court again considered Martinez's testimony outside the presence of the jury. Based on this second hearing, the trial court allowed her testimony. In the presence of the jury, Martinez testified that she dated Mourett at various times and that they were now common-law married. The two were not together at the time of the offense in Hood County. She received a call from Mourett stating that the police had not found a large quantity of methamphetamine in Cehand's impounded vehicle. Mourett stated that he, Cehand, and Appellant had driven to the city to purchase drugs and that their vehicle was stopped on the way back to Erath County. Martinez gave that information to the police. Martinez admitted on cross-examination that she never spoke with Appellant.

The State presented three other witnesses at the punishment phase. William L. Todsen was a forensic scientist for the Department of Public Safety. Todsen confirmed that the substance found in the vehicle was thirty-four grams of methamphetamine. The CI was recalled and testified that she ordered two eight-balls (approximately 7 grams) of methamphetamine from Appellant a week after the Hood County arrest and gave him the money for the drugs. The CI testified that Appellant told her to wait in a parking lot, but he never returned and she never recovered the money. Sergeant Dees then testified that Appellant was at the top of the hierarchy in methamphetamine distribution in the area.

### V. Discussion and Analysis

In his first and second issues, Appellant alleges that the trial court erred in admitting Martinez's testimony as to the statements Mourett made to her about the undiscovered drugs. Specifically, he argues the admission of Martinez's testimony violated his rights under the Confrontation Clause. Alternatively, Appellant contends that Martinez's testimony was inadmissible hearsay. In his third issue, Appellant complains of ineffective assistance of counsel asserting that defense counsel's failure to object during the punishment phase to both the testimony of Officers Luckie and Miller and the prosecution's impermissible jury argument prejudiced him.

#### A. Confrontation Clause

The Confrontation Clause of the Sixth Amendment provides a right in both federal and state prosecutions to confront adverse witnesses. U.S. CONST. amends. VI, XIV; *Pointer v. Texas*, 380 U.S. 400, 406 (1965); *Woodall v. State*, 336 S.W.3d 634, 641 (Tex. Crim. App. 2011). The principal concern of the Confrontation Clause is to ensure the reliability of the evidence against a

5

criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact. *Maryland v. Craig*, 497 U.S. 836, 845 (1990). Whether a statement is admissible under the Rules of Evidence and whether that same statement is admissible under the Confrontation Clause are separate questions. *Crawford v. Washington*, 541 U.S. 36, 50–51 (2004); *Wall*, 184 S.W.3d at 734–35. Thus, even when a statement offered against a defendant is admissible under evidentiary rules, the statement may implicate the Sixth Amendment's Confrontation Clause. *Gonzalez v. State*, 195 S.W.3d 114, 116 (Tex. Crim. App. 2006); *Clark v. State*, 282 S.W.3d 924, 930 (Tex. App.—Beaumont 2009, pet. ref'd).

The Confrontation Clause bars the admission of out-of-court testimonial statements of a witness unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness. *Crawford*, 541 U.S. at 53–54; *Wells v. State*, 241 S.W.3d 172, 174–75 (Tex. App.—Eastland 2007, pet. ref'd). Post-*Crawford*, the threshold question in any Confrontation Clause analysis is whether the statements at issue are testimonial or nontestimonial in nature. *Campos v. State*, 256 S.W.3d 757, 761 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd); *Wells*, 241 S.W.3d at 175. Generally, a statement is testimonial when the surrounding circumstances objectively indicate that the primary purpose of the interview or interrogation is to establish or prove past events potentially relevant to later criminal prosecution. *Davis v. Washington*, 547 U.S. 813, 822–23 (2006); *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008).

Applying these principles to Martinez's statements, we conclude that her statements to Officers Luckie and Miller were testimonial. *See United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004) (holding that a confidential informant's statements made knowingly to authorities and describing criminal activity are always testimonial). The information she provided was unquestionably relevant to any subsequent prosecution of those involved. *Davis*, 547 U.S. at 822–23. Without the tip from Martinez, Officers Luckie and Miller would not have discovered the remaining methamphetamine in the impounded vehicle. Furthermore, it would be unreasonable to assume that Martinez did not believe the statements would be available for use at a later trial. *Crawford*, 541 U.S. at 51–52. In fact, Martinez testified at Appellant's trial, obviating any Confrontation Clause issue regarding her statements to police.

We turn to the issue of whether Mourett's statements to Martinez were testimonial. Citing *Crawford*, Appellant argues that Mourett's statements to Martinez were testimonial

because Martinez was a confidential informant and Mourett was a potential codefendant of Appellant, rendering their conversation akin to a police interrogation. Mourett's statements to Martinez, however, cannot be considered testimonial. Mourett made the statements in the course of a conversation initiated by Mourett. His statements to Martinez were neither "official and formal in nature" nor "solemn declaration[s] or affirmation[s] made for the purpose of establishing or proving some fact." *Crawford*, 541 U.S. at 51. Viewed objectively, the statements were not made under circumstances indicating that the primary purpose was to enable police in a subsequent prosecution. Nor did Mourett make the statements under circumstances that would have objectively led him to believe that they would be available in a later trial.

The Second Circuit Court construed *Crawford* as it pertains to a coconspirator's statements. *United States v. Saget*, 377 F.3d 223 (2nd Cir. 2004). "[S]tatements cited by the [*Crawford*] Court as testimonial share certain characteristics; all involve a declarant's knowing responses to structured questioning in an investigative environment or a courtroom setting where the declarant would reasonably expect that his or her responses might be used in future judicial proceedings." *Id.* at 228. In *Saget*, a coconspirator disclosed statements implicating both himself and the defendant to a confidential informant. *Id.* at 225. Noting that *Crawford* applies only to testimonial statements, the Second Circuit Court, Justice Sotomayor, concluded that the coconspirator in *Saget* made the statements to one he thought was an ally or friend and that there was no evidence the coconspirator was trying to shift blame away from himself. *Id.* at 229–30.

As in *Saget*, Mourett's statements to Martinez are clearly nontestimonial. In *Crawford*, the Supreme Court stated that the Confrontation Clause applies to those who bear testimony against an accused. *Crawford*, 541 U.S. at 51. Aptly, the *Crawford* Court indicated that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id.* Applying *Crawford*'s rationale to this case, Mourett cannot be said to have made a formal statement to Martinez. Mourett's statements to her were akin to the casual remarks proposed in *Crawford* or the ally statements in *Saget*. Accordingly, the admission of Martinez's testimony did not violate Appellant's rights under the Confrontation Clause.

B. *Hearsay Exception*

Appellant next argues that the trial court erred in admitting Martinez's testimony because Mourett's statements do not fall within the statements-against-penal-interest exception to the

hearsay rule. Appellant asserts that, because the spousal privilege bars the use of Martinez's testimony against Mourett, the statements are not self-inculpatory and, therefore, cannot be considered to be against Mourett's penal interest.

We first note that, while Martinez and Mourett were common-law married at the time of trial, they were not together at the time of his statements regarding the offense in Hood County. The spousal privilege does not prevent testimony on premarital occurrences. TEX. R. EVID. 504. We review Appellant's claim on whether those premarital statements were against penal interest and, thus, not barred under the general hearsay exclusionary rule.

The hearsay rule excludes any out-of-court statement offered to prove the truth of the matter asserted. TEX. R. EVID. 801(d), 802. The exception for statements against penal interest stems from the commonsense notion that reasonable people tend not to make self-inculpatory statements unless they believe them to be true. TEX. R. EVID. 803(24); *see United States v. Watson*, 525 F.3d 583, 586 (7th Cir. 2008) ("Most people would not say that they had knocked over a bank, spit on a policeman, or shoved their mother if it wasn't true.").

Whether a hearsay statement is admissible as a statement against penal interest under Rule 803(24) requires a two-step inquiry. *Bingham v. State*, 987 S.W.2d 54, 57 (Tex. Crim. App. 1999). First, the trial court must determine whether the statement, viewed in context, subjects the declarant to criminal liability. *Id.* Second, corroborating evidence must be shown that is sufficiently convincing to "clearly indicate the trustworthiness of the statement." *Id.* The burden is on the proponent of the statement to make this showing. *Davis v. State*, 872 S.W.2d 743, 747 (Tex. Crim. App. 1994). Whether the burden has been satisfied is entrusted to the sound discretion of the trial court. *Cunningham v. State*, 877 S.W.2d 310, 313 (Tex. Crim. App. 1994). Statements against penal interest can inculpate both the declarant and a third party, such as a codefendant. *Dewberry v. State*, 4 S.W.3d 735, 751 (Tex. Crim. App. 1999). "An admission against a co-defendant declarant's interest can be admissible against the defendant so long as it is sufficiently against the declarant's interest to be reliable." *Id.*

Martinez testified that Mourett contacted her the day after he was arrested for possession along with Cehand and Appellant. Mourett admitted that he, Cehand, and Appellant went on a drug run to purchase one and one-half ounces of methamphetamine. Mourett was "freaking out" because the methamphetamine was sealed in a potato chip bag that the police had not found in

8

the car before impounding it. The statements Mourett made to Martinez were corroborated by Officers Luckie and Miller, who discovered the methamphetamine in a sealed potato chip bag.

In *Woods*, the Court of Criminal Appeals held that a codefendant's out-of-court statements to acquaintances indicating his involvement in a murder were admissible against Woods. *Woods v. State*, 152 S.W.3d 105, 113 (Tex. Crim. App. 2004). The *Woods* court stated the codefendant's statements were sufficiently corroborated statements against penal interest. *Id.* In that case, the codefendant's statements were "street corner" statements made to friends without any motive to shift blame or minimize involvement. *Id.* Here, Mourett had no motive to shift blame or minimize his involvement when he was soliciting Martinez's aid. Based on our review of Martinez's testimony, we conclude that the statements made by Mourett were sufficiently self-inculpatory. Because we conclude that Mourett's statements to Martinez fall within the statement-against-penal-interest exception to the hearsay rule and are nontestimonial, we hold that the trial court did not err when it admitted Martinez's testimony about what Mourett told her. Appellant's first and second issues are overruled.

### C. Ineffective Assistance of Counsel

In his final issue, Appellant complains of ineffective assistance of counsel. Specifically, Appellant argues that defense counsel's failure to object to the testimony of Officers Luckie and Miller during the punishment phase and to the prosecution's impermissible jury argument prejudiced him. *Strickland* governs our review, and if Appellant fails to make a showing of deficient performance under the first prong or prejudice under the second prong of the *Strickland* test, then Appellant has not satisfied his burden. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010); *Andrews*, 159 S.W.3d at 101; *Rylander*, 101 S.W.3d at 110–11. We will address the prejudice standard or second prong of *Strickland* first because, if Appellant has failed to show prejudice under that prong, then an in-depth analysis under the first prong is unnecessary.

The second prong of *Strickland* requires Appellant to establish that, but for trial counsel's ineffective assistance, there is a reasonable probability that the outcome of his trial would have differed. *Strickland*, 466 U.S. at 686–87. "[T]he analysis of the prejudice prong turns on whether the deficiency made any difference to the outcome of the case." *Riley v. State*, 378 S.W.3d 453, 458 (Tex. Crim. App. 2012). "This is a heavy burden which requires a 'substantial,' and not just a 'conceivable,' likelihood of a different result." *United States v. Wines*, 691 F.3d 599, 604 (5th Cir. 2012). A reviewing court need not consider both prongs of

the *Strickland* test and can dispose of an ineffectiveness claim if the defendant fails to demonstrate sufficient prejudice. *Cox*, 389 S.W.3d at 819 (citing *Strickland*, 466 U.S. at 697).

Appellant contends that his defense counsel provided ineffective assistance when he did not object to the testimony of Officers Luckie and Miller during the punishment phase of trial, which prejudiced Appellant because he was procedurally barred from appealing an unpreserved error. Objections to a specific line of questioning are preserved by either (1) obtaining a specific running objection or (2) obtaining a contrary ruling by the trial court outside the presence of the jury. *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); *Ethington v. State*, 819 S.W.2d 854, 859 (Tex. Crim. App. 1991). We note that the trial court permitted defense counsel to enter a running objection prior to Officer Luckie's testimony during the punishment phase to the "line of new questioning . . . based on . . . charges [] not pursued in Hood County." The running objection contextually covers the testimony of Officers Luckie and Miller, based on the charges not pursued in Hood County. *Ford v. State*, 919 S.W.2d 107, 113 (Tex. Crim. App. 1996) (holding a running objection granted for a prior witness was sufficient to preserve error regarding testimony of all witnesses pertaining to the same type of evidence). Because defense counsel actually did object, we conclude that Appellant's claim of ineffective assistance concerning the admission of Officer Luckie's and Officer Miller's testimony is without merit.

Appellant next asserts that he received ineffective assistance when his defense counsel failed to object to impermissible comments made by the State during its closing argument at the punishment phase. The trial court charged the jury on punishment, tracking the statutorily prescribed language in Article 37.07, section 4(b) of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(b) (West Supp. 2012). The State referenced the court's charge extensively in its closing, urging the jury to consider the potential effects of good behavior and parole on Appellant's sentence. Specifically, the State argued:

> In these instructions you're going to be told that under the law in this case [Appellant], if sentenced to a term of imprisonment, we know that's going to happen somewhere between fifteen and ninety-nine, if he's sentenced to a term of imprisonment, he may earn -- and I've highlighted that "earn", time off of the period of incarceration through the award of good conduct time. . . . Under the law in this case, . . . he will not become eligible for parole, that is, release, until the actual time he has served, plus the good credit, the good conduct time, the extra credit, equals one-fourth of the sentence you give him, or fifteen years, whichever is less. . . . As jurors, you're entitled to know the truth, and that is if you put a . . . number on that piece of paper, you don't have control over that

number, Texas Department of Criminal Justice, the prison says we can kick them out in one-fourth of that if we choose to do so, you don't have any say so over that, or fifteen years, whichever is less.

. . . .

. . . . What I submit to you is you need to be aware of those things and crank that into your equation, as members of this community, how long do you want the guarantee that he's not back out here with us, that's the question I'm asking you to answer for yourselves when you fill in that number.

Appellant did not object to the State's closing argument. Appellant did not request a limiting instruction, move for mistrial, or make a motion for new trial. Generally, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); *Thompson*, 9 S.W.3d at 814.

Appellant cites to the Third Court of Appeals's opinion in *Branch v. State*, 335 S.W.3d 893 (Tex. App.—Austin 2011, pet. ref'd). The *Branch* court held that the defendant's trial counsel was ineffective when he did not object to the prosecution's impermissible closing argument. 335 S.W.3d at 909. During the closing arguments at the punishment phase, the prosecution stated that, if the jury assessed punishment at life, the defendant would be released "in seven or eight years if he exhibited good conduct" and that the defendant "would 'never' serve as many as fifteen or twenty years if given a life sentence." *Id.* at 907. Relying on *Andrews*, 159 S.W.3d at 102, the Third Court of Appeals held that trial counsel had a duty to correct the prosecution's misstatement of law and that the failure to do so prejudiced the defendant because it left the jury with the impression that a life sentence would only ensure confinement for seven years. *Id.* at 910.

Article 37.07, section 4(b) of the Texas Code of Criminal Procedure requires that the jury instructions contain information on parole law. *Taylor v. State*, 233 S.W.3d 356, 359 (Tex. Crim. App. 2007). The court's charge complied with that requirement. In the present case, the State tracked the court's charge on punishment and then requested that the jury "be aware of [good conduct and parole] and crank that into" the equation. Because the State's closing argument was not improper, Appellant's trial counsel's failure to object cannot constitute deficient performance. *See Hawkins v. State*, 135 S.W.3d 72, 84 (Tex. Crim. App. 2004) (determining that it was not

improper for the prosecutor to ask the jury to take the existence of good conduct and parole law into account when assessing punishment).

Because Appellant has failed to establish that he was prejudiced by the State's closing argument, we need not conduct an in-depth analysis under *Strickland*'s first prong. The jury assessed a 60-year sentence, which is well within the 15- to 99-year punishment range applicable to Appellant's conviction. We overrule Appellant's third issue.

*This Court's Ruling*

The judgment of the trial court is affirmed.


MIKE WILLSON
JUSTICE


March 21, 2013

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.