**AFFIRM; and Opinion Filed June 1, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-01065-CR

**ARTHUR FRANKLIN MILLER, JR., Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 296th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 296-81265-2013**

## MEMORANDUM OPINION

Before Justices Lang, Stoddart, and Schenck
Opinion by Justice Schenck

After a bench trial, the trial court found appellant Arthur Franklin Miller, Jr. guilty on one count of aggravated sexual assault of a child and one count of indecency with a child by sexual contact. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B) (West Supp. 2014) (aggravated sexual assault); TEX. PENAL CODE ANN. § 21.11(a)(1) (West 2011) (indecency with a child). The court assessed punishment at twenty-two years' confinement on the first count and ten years' confinement on the second count. In a single issue, appellant contends he received ineffective assistance of counsel. We affirm the trial court's judgment.

### BACKGROUND

Appellant was indicted for offenses that allegedly occurred in 2001 and involved a child then younger than fourteen years of age. Appellant waived his right to a jury and pleaded not guilty before the trial court. After the trial court found him guilty and assessed punishment,

appellant's trial counsel filed a motion for new trial on appellant's behalf, then withdrew. Appellant obtained new counsel, who represented him at the hearing on the motion for new trial. At the hearing, appellant sought a new trial based on alleged ineffective assistance of his trial counsel. Appellant offered evidence that his trial counsel incorrectly advised him that he would receive probation[1] from the trial court if he waived his right to a jury trial. In fact, appellant was not eligible to receive probation from a trial judge. The trial court denied appellant's motion for new trial. This appeal followed.

### STANDARD OF REVIEW AND APPLICABLE LAW

We review a trial court's ruling on a motion for new trial for abuse of discretion, "reversing only if the trial judge's opinion was clearly erroneous and arbitrary." *Riley v. State*, 378 S.W.3d 453, 456 (Tex. Crim. App. 2012). A trial court abuses its discretion if no reasonable view of the record could support the trial court's ruling. *Id.* at 457. Under this deferential standard, we view the evidence in the light most favorable to the trial court's ruling. *Id.* We may not substitute our own judgment for that of the trial court, and must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id.* "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.*

Under *Strickland v. Washington*, 466 U.S. 668, 690–92 (1984), and *Hernandez v. State*, 726 S.W.2d 53, 54–57 (Tex. Crim. App. 1986), an appellant alleging ineffective assistance of counsel must prove that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance prejudiced the defense. The prejudice prong requires a showing that, but for counsel's errors, there was a reasonable probability that the result of the proceedings would have been different.

---

[1] Although the term now used in the Code of Criminal Procedure is "community supervision," *see* TEX. CODE CRIM. PROC. ANN. art. 42.12 (West Supp. 2014), the parties used the former term "probation" throughout the proceedings below. We use the terms interchangeably in this opinion. *See Riley v. State*, 378 S.W.3d 453, 455 n.1 (Tex. Crim. App. 2012) (statutory term for probation was changed to community supervision in 1993; both terms "refer to the same process").

*Hernandez*, 726 S.W.2d at 55. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Both the "performance" and "prejudice" prongs of the inquiry are mixed questions of law and fact, but the prejudice prong often turns upon the credibility and demeanor of witnesses. *Riley*, 378 S.W.3d at 458. We "show almost total deference to a trial court's findings of historical facts as well as mixed questions of law and fact that turn on an evaluation of credibility and demeanor." *Id.*

When a claim of ineffectiveness is based on counsel's misunderstanding of the law regarding probation, there must be evidence that (1) the defendant was initially eligible for probation, (2) counsel's advice was not in furtherance of a valid trial strategy, (3) the defendant's election of the assessor of punishment was based upon counsel's erroneous advice, and (4) the results of the proceeding would have been different had his attorney correctly informed him of the law. *Id.* at 458–59 (citing *State v. Recer,* 815 S.W.2d 730, 731–32 (Tex. Crim. App. 1991)).

Where the trial court denies a motion for a new trial that raised the ineffective assistance of counsel claim, we "presume that all findings made by the trial judge were made in favor of the prevailing party, and hence, we assume that the trial judge implicitly found that there was no reasonable probability that the result of the proceeding would have been different." *Id.* at 459.

## DISCUSSION

The State concedes that counsel's advice to appellant regarding his eligibility for probation "fell below the prevailing professional norms."[2] Although under article 42.12, section 3 of the Texas Code of Criminal Procedure, a judge may suspend the imposition of a defendant's

---

[2] The Court of Criminal Appeals has explained that "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003)). Here, although new counsel subpoenaed trial counsel to testify at the hearing on the motion for new trial, there was no return on the subpoena. The record contains a proposed affidavit sent by appellant's new counsel to his trial counsel, and trial counsel's e-mailed response, refusing to sign the affidavit and vigorously contesting its content. In any event, even though the State has conceded the first prong of *Strickland*, appellant must establish both prongs to prove ineffective assistance of counsel. *See, e.g., Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (appellant must meet both prongs of *Strickland*; where appellant failed to meet one prong, court need not consider the other). As we explain below, we conclude appellant failed to establish the second prong.

–3–

sentence and place the defendant on community supervision, these provisions do not apply to a defendant such as appellant who has been adjudged guilty of indecency with a child or aggravated sexual assault. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, §§ 3, 3g(a)(C), (E) (West Supp. 2014).[3]

Therefore, the only issue presented is whether counsel's deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 690–92. We consider whether there was a "reasonable probability" that the result of the proceeding would have been different if appellant's attorney had given him correct advice; that is, whether a jury would have sentenced appellant to probation. *See Riley*, 378 S.W.3d at 458.

Because there was no physical evidence offered by the State, the result of the trial depended entirely on the credibility of the witnesses. Appellant's granddaughter A.M. was one of the two complainants who testified at trial. A.M. was aged 22 and the mother of two-year-old twins at the time of trial. She offered extensive testimony of appellant's unwanted touching on numerous occasions beginning when she was nine or ten years old, at a time when she, her father, and her brother were living with appellant. She testified that her mother was no longer living with the family at the time. She eventually told her father, appellant's son, of the abuse, asking him to "do something," but he "just looked down at the floor and waited for me to go back to my room." She testified that her family was financially dependent on appellant. She finally decided to report the abuse to law enforcement after her children were born. She testified she did not want her children to be afraid to "say something" if "they were ever in the same situation as me."

---

[3] Although article 42.12 has been amended in every legislative session since the date of the offenses at issue, the statutory exceptions in section 3g to probation for persons adjudged guilty of indecency with a child or aggravated sexual assault existed in 2001 and are applicable here. *See, e.g.,* Act of May 20, 1999, 76th Leg., R.S., ch 806, § 1, 1999 TEX. GEN. LAWS 3439, 3450 (amendment to § 3g applicable to offenses on or after September 1, 1999). Until 2007, however, a jury could recommend probation for a defendant found guilty of these offenses. *See* Act of May 18, 2007, 80th Leg., R.S., ch. 593, §§ 1.06, 4.01(a), 2007 TEX. GEN. LAWS 1120, 1123, 1148 (for offenses committed on or after September 1, 2007, persons convicted of aggravated sexual assault and indecency with a child not eligible for probation from jury if victim of offense was younger than 14 years of age at time offense was committed).

A.M.'s testimony was supported by the testimony of Billy Lanier, a Collin County deputy sheriff assigned to the child abuse task force who investigated A.M.'s allegations. Lanier testified he was able to corroborate information A.M. provided to law enforcement. In addition to appellant, A.M. also named her uncle, appellant's son Arthur Miller III ("Uncle"), as a person who molested her. Lanier testified that Uncle "plead[ed] guilty to molesting" A.M., and Lanier interviewed Uncle during his investigation. In this forensic interview, Uncle provided details that corroborated A.M.'s allegations. At the time of trial, Uncle was in prison as a result of his guilty plea to the charges relating to his abuse of A.M.

A.M.'s father, her brother, and her aunt (appellant's daughter) also testified at trial. Each of these witnesses testified that they did not believe A.M. They also testified to various inconsistencies in A.M.'s testimony. For example, they testified that appellant's home did not have a "computer room," in contrast to A.M.'s testimony that abuse took place there. A.M.'s father also testified that he thought A.M. had fabricated the charges for some financial gain from appellant. These witnesses were cross-examined about their current or past financial dependence on appellant and other matters.

The trial court was required to make determinations regarding the credibility of these witnesses in order to render judgment. The record reflects the trial court accepted some witnesses' testimony but not others; appellant was acquitted on charges relating to the other complainant, formerly a family member, who also testified at trial. There is no indication that a jury would make a different assessment of the witnesses' credibility. Although appellant points to the conflict in the testimony about the existence of a "computer room" in his home, this conflict was resolved against him by the trial court. The trial court found appellant guilty of aggravated sexual assault and indecency with a child. Other than appellant's lack of a criminal record, his age, and his denial of the charges, matters which were also raised before the trial

court, appellant does not contend there were other factors which a jury might have found compelling in recommending probation rather than a prison sentence.

Appellant testified at the hearing on his motion for new trial. He explained that he relied on his trial counsel "to do what's best for me" in making the decision whether to waive a jury. Trial counsel recommended "to drive on with the trial with the judge. And that I would get probation." He proceeded to trial before the judge and was expecting probation as the "worst case scenario," based on the advice of his counsel. He was never told that he was not eligible for probation if he pleaded "not guilty" before a trial judge. His trial counsel told him on several occasions "not to worry; that I would be given probation; that I was too old to go to jail." His trial counsel told him "we do not want a jury trial; that we wanted to go to trial by judge." He pleaded "not guilty" to the judge because he was not guilty. His counsel advised him he was eligible for probation. On cross-examination, appellant conceded that the trial judge correctly advised him of the range of punishment for both indecency by contact and aggravated sexual assault of a child, including five to ninety-nine years to life in the penitentiary. The record also reflects that the trial judge advised appellant that because his offense occurred before 2007, "a jury could give you probation," although appellant did not recall this admonishment on cross-examination. Appellant testified that his counsel never explained the advantages or disadvantages of choosing or waiving a jury to decide his case.

Appellant's daughter also testified at the hearing on appellant's motion for new trial. She was present in several meetings with appellant and trial counsel. She testified that trial counsel advised appellant to waive a jury because the trial judge "was fair," and "[w]ith this judge, he'll get probation." She also testified that trial counsel told appellant, "don't worry . . . . [t]hey're not going to throw you in jail. You're too old, and you're going to get probation." The advice she heard from appellant's trial attorney was to "waive the jury" and "get probation from the judge."

Two of appellant's sons also testified, consistent with their sister's testimony, that appellant was confused even after he was in prison, thinking he had been given probation in accordance with his counsel's advice. Both also testified that their father was not aware that he could not "get probation" from the trial judge, and that their father had been told by trial counsel that probation was the "worst case scenario." They met with trial counsel after appellant was convicted and sentenced, and testified that even then, trial counsel was predicting "[a] 98 percent chance that he'll have my dad out within a week."

At the motion for new trial hearing, appellant's counsel also pointed out that at trial, the prosecutor examined witnesses and made arguments relevant to probation, apparently acting under the same mistaken assumption that appellant was eligible for probation from the trial court.

After hearing the evidence and argument in support of appellant's motion for new trial, the trial court noted that appellant had been admonished properly before he waived a jury. The court also explained, "I do find that [trial counsel] was in error about thinking that I could give probation and the State was in error thinking I could give probation." The court concluded, however, that counsel's representation was not "so deficient to be a miscarriage of justice."[4] The trial court denied the motion for new trial. In light of this ruling, we presume "the trial judge implicitly found that there was no reasonable probability that the result of the proceeding would have been different." *See Riley*, 378 S.W.3d at 459. This finding is a mixed question of law and fact, and a reviewing court must defer to a trial court's credibility determinations. *See id.* The trial court was not required to accept appellant's claim that he would have acted differently had he received correct advice. *See id.* And even if the trial court accepted this claim, appellant was

---

[4] At the hearing on the motion for new trial, appellant's counsel argued that a new trial should be granted "in the interest of justice," citing *State v. Herndon*, 215 S.W.3d 901, 906–07 (Tex. Crim. App. 2007), and Texas Rules of Appellate Procedure 21 (New Trials in Criminal Cases) and 44.2 (Reversible Error in Criminal Cases). The trial court therefore referred to this standard in announcing its ruling.

also required to establish that correct advice would have changed the result of the proceeding. *See id.* "This is a heavy burden which requires a 'substantial,' and not just a 'conceivable,' likelihood of a different result." *Walker v. State*, 406 S.W.3d 590, 599 (Tex. App.—Eastland 2013, pet. ref'd) (quoting *United States v. Wines,* 691 F.3d 599, 604 (5th Cir. 2012)).

A reasonable view of the record, viewed in the light most favorable to the trial court's ruling, could support the trial court's implicit finding that the result of the proceedings in reasonable probability would not have been different. *See id*. We conclude appellant has failed to meet his burden under the second prong of *Strickland*. The trial court properly denied appellant's motion for new trial. We overrule appellant's sole issue.

## CONCLUSION

We affirm the trial court's judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

141065F.U05

–8–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ARTHUR FRANKLIN MILLER, JR., Appellant

No. 05-14-01065-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 296th Judicial District Court, Collin County, Texas
Trial Court Cause No. 296-81265-2013.
Opinion delivered by Justice Schenck, Justices Lang and Stoddart participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 1st day of June, 2015.