**Opinion filed March 31, 2017**



In The

# Eleventh Court of Appeals

_____

## No. 11-15-00281-CR

_____

## ANTONIO DE LA CRUZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 106th District Court**

**Dawson County, Texas**

**Trial Court Cause No. 15-7606**

## MEMORANDUM OPINION

The grand jury indicted Antonio De La Cruz for two offenses of aggravated sexual assault of a child[1] and for a third offense of continuous sexual abuse of a child.[2] Appellant pleaded not guilty to all charges. A jury found Appellant guilty of all three offenses, and the trial court assessed his punishment at confinement for

---

[1]*See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (a)(2)(B) (West Supp. 2016).

[2]*See* PENAL § 21.02.

life for each offense and ordered that the sentences shall run consecutively. In two issues on appeal, Appellant asserts that the trial court abused its discretion when it denied his motion for new trial and that he received ineffective assistance of counsel at trial. We affirm.

## I. *Evidence at Trial*

Appellant does not assert a sufficiency challenge, so we only outline those facts necessary to provide context for the issues that he raises on appeal. Appellant married Molly,[3] who had a five-year-old daughter, A.S. Shortly after Appellant and Molly married, Molly gave birth to Appellant's son, L.D., and the family moved to Lamesa. During their marriage, Appellant verbally abused Molly, and she began to use drugs and drink. Molly admitted that her substance abuse often caused her to "check out of reality." While in Lamesa, Appellant worked as an undercover narcotics officer for Dawson County Sheriff's Department, but he spent a lot of time at home and sexually abused A.S. at the home.

Two years later, the family moved to Olton, and Appellant worked as a truck driver. Molly's substance abuse issues worsened while they lived in Olton. In September 2008, while Appellant was away working, A.S. revealed to her mother that Appellant had sexually abused her. Molly confronted Appellant via text message regarding her daughter's accusation. When Appellant returned and the subject of A.S.'s abuse arose, Appellant beat Molly in front of A.S. and L.D. Molly explained that, in order to "[k]eep us all safe," she did not report her daughter's sexual abuse at that time. She also explained that her substance abuse led her to compartmentalize her knowledge of her daughter's sexual abuse. In October 2010, Appellant assaulted Molly in another domestic violence incident, which eventually

---

[3]Several surnames have been used by Molly during this case; however, in the interest of protecting the victim, we will refer to her as Molly.

led to his imprisonment. In June 2013, A.S. reminded Molly of Appellant's sexual abuse, and Molly reported this abuse to the Lamb County District Attorney's Office.

At trial, A.S. testified and confirmed many of the details provided by her mother earlier in trial, and she explained in detail how Appellant had sexually abused her.

Appellant testified in his own defense and claimed that he "did not molest [A.S.]." In closing argument, Appellant's trial counsel suggested that A.S. had fabricated her sexual abuse claims in order to protect her mother. After the jury convicted Appellant of all three offenses, he retained new counsel, and that counsel moved for a new trial, which was overruled by operation of law. Appellant then filed this appeal.

## II. *Standard of Review*

We review a trial court's denial of a motion for new trial under an abuse-of-discretion standard. *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014). We review the trial court's denial of a hearing on a motion for new trial under the same standard. *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). A trial court abuses its discretion when it denies a motion for new trial when no reasonable view of the record could support the ruling. *Colyer*, 428 S.W.3d at 122 (citing *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006)). A trial court abuses its discretion when it fails to grant a hearing if the motion and accompanying affidavits raise matters not determinable from the record and establish reasonable grounds that demonstrate the defendant could potentially be entitled to relief. *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009).

We review an ineffective assistance of counsel claim under the *Strickland* standard, which is a two-part analysis that includes a performance prong and a prejudice prong. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). For the performance prong, Appellant must show that trial counsel's performance was

deficient. *Id.* For the prejudice prong, Appellant must show that there is a reasonable probability that the outcome would have differed but for trial counsel's errors. *See Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *Strickland*, 466 U.S. at 694. "A failure to make a showing under either prong of the *Strickland* test defeats a claim of ineffective assistance of counsel." *Hudson v. State*, No. 11-15-00047-CR, 2016 WL 3573484, at *2 (Tex. App.—Eastland June 30, 2016, pet. ref'd) (mem. op., not designated for publication) (citing *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010)).

### III. *Analysis*

Appellant advances two issues on appeal. We address his second issue on ineffective assistance of counsel first, followed by his claim that the trial court abused its discretion when it denied his motion for new trial and did so without holding a hearing.

A. <u>Issue Two</u>: *Appellant failed to establish that his trial counsel was ineffective.*

In his second issue, Appellant argues that his trial counsel's performance was deficient because he failed to do several things. First, he failed to adequately investigate his case and conduct an adequate voir dire. Second, he failed to raise a *Batson*[4] challenge and challenge a biased venire panel. Third, he failed to adequately cross-examine certain witnesses. Fourth, he failed to conduct a punishment phase defense or give a closing argument in the punishment phase. An appellate review of defense counsel's performance is highly deferential, and we presume that counsel's actions fell within the wide range of reasonable and professional assistance. *Strickland*, 466 U.S. at 689; *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *Walker v. State*, 406 S.W.3d 590, 594 (Tex. App.—Eastland 2013, pet. ref'd).

---

[4]*Batson v. Kentucky*, 476 U.S. 79 (1986).

To overcome this presumption, Appellant's claim of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). In most cases, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Id.* at 813–14. Appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *Hayden v. State*, 155 S.W.3d 640, 648 (Tex. App.—Eastland 2005, pet. ref'd). If trial counsel has not had an opportunity to explain the challenged actions, then we will not conclude that those actions constituted deficient performance unless they were so outrageous that no competent attorney would have engaged in them. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). As we explain below, we disagree with Appellant that his trial counsel was deficient under *Strickland*.

### 1. Alleged failure to investigate case and conduct an adequate voir dire.

Appellant asserts that the testimony of the witnesses named in his motion for new trial would have changed the trial's outcome. Any trial counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. If trial counsel fails to investigate witnesses, particularly eyewitnesses, this failure can support an ineffective assistance of counsel claim. *Joseph v. State*, 367 S.W.3d 741, 744–45 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). A reviewing court determining whether counsel's performance was ineffective does not second-guess these decisions but, rather, looks to the "reasonableness" of the attorney's actions at the time he made the decisions. *Strickland*, 466 U.S. at 690–91. In Appellant's case,

5

even if the named witnesses were available and willing to testify, they were not eyewitnesses, and their testimony would have done little other than further diminish Molly's already damaged credibility. Further pursuit of that line of attack would have done nothing to refute A.S.'s testimony. *See Hale v. State*, 140 S.W.3d 381, 392 (Tex. App.—Fort Worth 2004, pet. ref'd) (trial counsel not found deficient for failing to call certain witnesses because they were not eyewitnesses and could not have exculpated him). Appellant also claims that his counsel's failure to call any defense witnesses, other than Appellant, or present exhibits is representative of his ineffective assistance. But an ineffective assistance of counsel claim must "be firmly founded in the record." *Thompson*, 9 S.W.3d at 813. Appellant references nothing in the record to demonstrate that no plausible, professional reason existed for not including more witnesses. *See Bone*, 77 S.W. 3d at 833.

Appellant also asserts that his trial counsel was ineffective because he failed to adequately question venire members and allowed a racially biased jury to be seated. Appellant alleges that his trial counsel "did not ask one question that could be reasonably expected to result in a strike for cause or to reveal any undiscovered bias against the Defendant." However, trial strategy dictates the topics covered in voir dire. Prior to the defense's voir dire, the prosecution covered many topics pertinent to the jury's impartiality. These topics included, but were not limited to, the panel's familiarity with the parties and potential witnesses, the panel's experience with and feelings toward sexual assault, and the panel's ability to follow the law and the evidentiary standards common in sexual assault cases. If a prosecutor's voir dire has already elicited prejudices and biases among the venire panel, then defense counsel is not ineffective for failing to retread that same ground. *See Goodspeed*, 187 S.W.3d at 392 (it may be appropriate trial strategy for defense counsel to avoid repeating prosecutor's line of questioning on voir dire). In addition, trial counsel asked the venire panel if anyone on the venire panel had already formed

6

an opinion as to his client's guilt, asked if any of them had worked for Child Protective Services, and stressed the importance of keeping an open mind to his client's case. After a review of the record, we cannot say that trial counsel's decision not to retrace several areas of questioning that the State had already covered was an unsound strategy that no reasonable professional would have employed.

### 2. *Alleged failure to make a Batson challenge and challenge the jury's bias.*

Appellant asserts that his counsel was ineffective when counsel failed to raise a *Batson* challenge on the ground that eleven members of the jury panel and both alternates were Caucasian, while his client was Hispanic. Since there was no *Batson* challenge at trial, the record is silent as to the reasons for the State's peremptory strikes. Appellant references nothing in the record that demonstrates that the jury was racially prejudiced against him. Furthermore, Appellant has not shown that trial counsel's failure to raise a *Batson* challenge constituted ineffective assistance in this case. Appellant has met neither prong of *Strickland* with respect to his *Batson* assertion. *See Batiste v. State*, 888 S.W.2d 9, 15 (Tex. Crim. App. 1994). The Court of Criminal Appeals has stated that the "possibility of racial prejudice in the selection of the petit jury affects the adversarial presentation of the case not at all." *Id.* Though an all-white jury can certainly render a fair and impartial verdict in the trial of a minority defendant, its failure to do so eliminates but one mechanism with which a neutral fact-finding body is created. *Id.*

Appellant argues that his counsel was ineffective because he allowed five objectionable veniremembers to be empaneled on the jury. Appellant argues that these jurors were objectionable because four jurors knew witnesses in the case and one juror knew Appellant, Molly, A.S., and L.D. First, we note that a person's past personal experience with the subject of the trial or a previous relationship with the parties of the case does not necessarily strip that person of his or her ability to

7

impartially weigh a defendant's guilt. *See Garcia v. State*, 887 S.W.2d 846, 858 (Tex. Crim. App. 1994) (trial court did not abuse its discretion in refusing to grant defendant's challenge for cause because venireperson stated he could set aside his preconceptions). Second, we realize that it often proves prudent for defense counsel to decline to challenge a venire person who is familiar with a witness but who may otherwise prove to be favorably inclined to the defendant or, in the alternative, may prove to be less objectionable than other veniremembers. *See Wilkins v. State*, No. 11-07-00341-CR, 2009 WL 2403570, at *2 (Tex. App.—Eastland Aug. 6, 2009, pet. ref'd) (mem. op., not designated for publication) (counsel was not deficient for failing to challenge juror who knew a witness when other venirepersons could have proved more objectionable). This latter dilemma tends to arise in smaller communities without a large pool of veniremembers. *See id.*

Appellant has not demonstrated the deficiency of his counsel's voir dire. All veniremembers in question stated in voir dire that they could be impartial despite the fact that they knew some of the witnesses or parties involved. Furthermore, in small communities like the one in which this trial was held, many veniremembers are acquainted with the case's witnesses, making it impracticable to select a jury completely unfamiliar with the case's witnesses. Indeed, trial counsel could have reasonably concluded that these veniremembers were preferable to other veniremembers who also knew witnesses. Trial counsel's decision not to challenge the seating of Kenny Singleton, who knew Appellant, the victim, and her mother, could have been a trial strategy. Referring to this prior relationship, Singleton volunteered during a bench conference that "we used to hang out with them and eat and stuff." Despite this prior relationship, Singleton said he could remain impartial. Asked again by the State whether his past relationship with the victim and her mother would affect his impartiality, Singleton reaffirmed that he could remain impartial in

8

the trial. As a result, Appellant has not demonstrated the deficiency of his counsel's voir dire.

### 3. Alleged failure to adequately cross-examine Ranger Willer.

Appellant claims that his trial counsel's inquiry into the details of Ranger Willer's report was deficient and that it irreparably harmed Appellant's chances of acquittal. Texas Ranger Stuart Willer, Jr. testified about Appellant's arrest interview and Appellant's reaction to the sexual abuse allegations. As the lead investigator of this case, Ranger Willer also reviewed the interview the victim gave at the Child Advocacy Center, made a report of his findings, and recommended charges be filed against Appellant. Trial counsel's cross-examination of Ranger Willer focused largely on the dates and events of Ranger Willer's investigation, as well as the details of the report, some of which were graphic in nature. On redirect, the prosecution inquired about many similar details of Ranger Willer's report.

The record does not reveal trial counsel's reasoning for the questions asked during cross-examination of Ranger Willer. Trial counsel could have reasonably thought that it was in his client's best interests to preemptively introduce detrimental testimony early in the trial and hope that his client's later testimony would ameliorate this effect, or he could have hoped to show inconsistencies in the victim's testimony. "[C]ross-examination is an art, not a science, and it cannot be adequately judged in hindsight." *Ex parte McFarland*, 163 S.W. 3d 743, 756 (Tex. Crim. App. 2005). However, even if we were to assume this cross-examination was deficient, we are not convinced this performance prejudiced Appellant. The State adduced overwhelming evidence of Appellant's guilt that supports the jury's finding of guilt beyond a reasonable doubt. The jury heard compelling testimony from the victim and her mother, the forensic interviewer, and from Appellant himself, whose credibility was severely questioned by the State.

9

*4. Alleged failure to present more evidence and a closing argument in the punishment phase.*

Appellant next argues that his counsel was ineffective because trial counsel failed to present sufficient evidence in the punishment phase and failed to present a closing argument. First, we turn to Appellant's argument that counsel failed to present a defense. A defendant has a right to present mitigating evidence during the punishment phase of a trial, but there is no requirement that he do so. TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1) (West Supp. 2016). A defendant may waive any rights enjoyed with the exception of the right of trial by jury in a capital felony case. CRIM. PROC. art. 1.14 (West 2005). Appellant's trial counsel cross-examined several witnesses called by the State, but he only called one witness in the punishment stage, Molly. Upon the conclusion of Molly's cross-examination, Appellant's trial counsel made the following statement regarding the remainder of his client's punishment phase defense:

> Judge, after visiting with Mr. Antonio De La Cruz, and also visiting with him about witnesses, that I certainly would be more than happy to present, including family members and everything, Mr. De La Cruz has reviewed the PSI. There is one correction he wants to make, and that's as to his permanent address. Other than that, there will be no further witnesses from our side.

Appellant did not controvert this waiver in his motion for new trial, and the record provides no evidence that trial counsel failed to accede to Appellant's requests.

Finally, Appellant claims that his punishment phase defense was prejudiced by his counsel's failure to deliver a closing argument or to object to the State's motion to stack his sentences. Again, we disagree. We begin by examining trial counsel's closing argument during the punishment phase. In this respect, trial counsel "has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage."

10

*Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003). Therefore, a review of an attorney's summation is "highly deferential." *Id.*

Although trial counsel's closing argument was brief, Appellant's decision to instruct his counsel not to call additional witnesses in the punishment phase, even though counsel was prepared to do so, was Appellant's choice. In light of the overwhelming weight of evidence against Appellant, we cannot say that counsel's actions in the punishment phase lacked a strategy because counsel acceded to Appellant's wishes. Likewise, the trial court had the discretion to stack or cumulate the sentences. *See* PENAL § 3.03(b)(2)(A). Appellant has not demonstrated in the record that an objection to cumulation, given the nature of the offenses and the overwhelming evidence against him, would have resulted in a different outcome on punishment.

B. *Issue One: The trial court did not abuse its discretion when it denied Appellant's motion for new trial without a hearing.*

Appellant asserts in his first issue that the trial court abused its discretion when it refused to grant his motion for new trial because he alleged that his trial counsel failed to call material witnesses that would have revealed his innocence and because his trial counsel allowed perjured testimony to aid in Appellant's conviction. When an appellant alleges ineffective assistance of counsel in a motion for new trial, he must allege facts that demonstrate that he could prevail under both prongs of the *Strickland* test. *Smith*, 286 S.W.3d at 338; *see Strickland*, 466 U.S. at 686. Thus, Appellant must demonstrate that his counsel's performance fell below an objective standard of reasonableness and that, but for these errors, the outcome of the trial would have been different. *Strickland*, 466 U.S. at 693–94.

Appellant complains that his trial counsel should have investigated the following witnesses whose testimony would have helped prove his innocence: Dr. Enrique Martinez, David Martinez, Mary Infante, Gayle Villarreal, and

11

Dr. Richard Lee Wall.  However, Appellant filed no affidavits from any of those witnesses, nor did he confirm that they were available to testify and would have testified at trial.  As a result, we cannot consider the hypothetical effect that these witnesses could have had on Appellant's trial.  *See Idowu v. State*, No. 05-02-00503-CR, 2003 WL 21350105, at *1 (Tex. App.—Dallas June 10, 2003, pet. ref'd) (not designated for publication) (holding that trial court did not abuse its discretion by denying motion for new trial without a hearing when the appellant failed to include affidavits demonstrating the availability of the witnesses).

Appellant also claims that Molly's damaging testimony could have been mitigated or wholly vitiated had defense counsel called Velma G. Solórzano, his attorney in his divorce proceeding with Molly.  Appellant claimed that Solórzano would have testified how Molly lied about one of her abuse allegations against Appellant.  However, Solórzano's affidavit, which was signed on April 16, 2016, was not attached to Appellant's motion for new trial.  Because this affidavit was not before the trial court at the time that Appellant filed his motion for new trial, we will not consider it on appeal.

Appellant also argues that the trial court abused its discretion when it failed to hold a hearing on Appellant's motion for new trial.  Appellant claimed in his affidavit, which was attached to his motion for new trial, and in his brief that his counsel failed to adequately prepare for trial and failed to interview potential witnesses that would have allegedly aided Appellant's defense.  A defendant does not have an "absolute right" to a hearing on a motion for new trial.  *Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993).  The purposes of a hearing on a motion for new trial are (1) to determine whether the case should be retried and (2) to prepare a record for presenting issues on appeal if the trial court denies the motion.  *Reyes v. State*, 465 S.W.3d 801, 805 (Tex. App.—Eastland 2015, pet. ref'd).  A defendant need only assert reasonable grounds for relief that are not determinable from the

record in order to be entitled to a hearing. *Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994). In addition, a motion for new trial must be supported by an affidavit specifically setting out the factual basis for the claim. *Hobbs*, 298 S.W.3d at 199. If the affidavit is conclusory, is unsupported by facts, or fails to provide requisite notice of the basis for the relief claimed, no hearing is required. *Id.* However, Appellant could be entitled to a new trial if the new evidence was not merely cumulative or impeaching. *Reyes*, 465 S.W.3d at 806 (citing *Boyett v. State*, 692 S.W.2d 512, 516 (Tex. Crim. App. 1985)). Appellant, with respect to an ineffective-assistance-of-counsel claim, "does not have to plead a *prima facie* case, but he must at least allege facts that show reasonable grounds to believe that he *could* prevail under *both* prongs" of the *Strickland* test. *Smith*, 286 S.W.3d at 338; *see Strickland*, 466 U.S. at 686.

As we previously explained, Appellant did not attach any affidavits from the potential witnesses. He also did not allege in his motion and accompanying affidavit evidentiary facts outside the record that specifically outlined what witnesses were available to testify and what they would have said that addressed A.S.'s allegations. He also failed to show evidentiary facts outside the record that supported the allegation that defense counsel's performance was deficient and that, but for that deficiency, the outcome of the trial would have been different. Appellant also claims that Molly allegedly committed "food-stamp" fraud, abused medications or drugs, and asserted that Appellant had abused or assaulted her, but Appellant provides no evidentiary facts outside the record to substantiate how his allegations affect A.S.'s abuse allegations. In addition, Appellant does not explain in his affidavit what admissible testimony Infante or Martinez could have provided that would have resulted in a different outcome of the trial. Finally, Appellant did not explain how he thought the jurors were racially biased or why he thought defense counsel had not properly questioned them. Because Appellant did not raise evidentiary facts outside

the record on matters not determinable from the record and because he failed to establish reasonable grounds to prove both the performance and prejudice prongs of *Strickland*, the trial court did not abuse its discretion when it failed to hold a hearing on Appellant's motion for new trial. *See Hobbs*, 298 S.W.3d at 199.

## IV. *This Court's Ruling*

After a review of the record, we overrule Appellant's first and second issues on appeal. We affirm the judgments of the trial court.


MIKE WILLSON

JUSTICE


March 31, 2017

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

14